**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNICOLORS, INC., a California Corporation,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>URBAN OUTFITTERS, INC., a California Corporation, individually and Beneficiary and Heir to the Estate of Free People, LLC,<br>*Defendant-Appellant.* | No. 15-55507<br><br>D.C. No.<br>2:14-cv-01029-SJO-VBK<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted January 13, 2017
Pasadena, California

Filed April 3, 2017

Before: Richard C. Tallman and Michelle T. Friedland, Circuit Judges, and William Horsley Orrick[*], District Judge.

Opinion by Judge Orrick

---

[*] The Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

## SUMMARY[**]

### Copyright

The panel affirmed the district court's judgment in favor of the plaintiff in a copyright infringement case involving fabric designs.

Affirming the district court's summary judgment in favor of the plaintiff on the issue of copyright infringement, the panel held that the district court did not err in its application of the subjective "intrinsic test." The panel held that where the extrinsic similarity of two works is so strong that the works are near duplicates save for superficial differences, the district court may properly conclude that no reasonable jury could find that the works are not substantially similar in their overall concept and feel. The panel also held that it was permissible to infer copying in this case, even absent evidence of access.

The panel held that the district court did not err in concluding, on summary judgment, that the plaintiff had validly registered a fabric design as part of a collection.

Affirming the district court's judgment after a jury trial on the issues of willful infringement and damages, the panel held that substantial evidence supported the jury's verdict because the evidence showed that the defendant acted with reckless disregard for the possibility that the fabric it sampled was protected by copyright.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel addressed additional issues in a concurrently filed memorandum disposition.

## COUNSEL

Stephanie P. Alexander (argued), Tara L. Martin, and Miles D. Scully, Gordon & Rees LLP, Irvine, California, for Defendants-Appellants.

Scott Alan Burroughs (argued), Trevor W. Barrett, and Stephen M. Doniger, Doniger Burroughs, Venice, California, for Plaintiff-Appellee.

## OPINION

ORRICK, District Judge:

### INTRODUCTION

Urban Outfitters, Inc. and Century 21 Department Stores, LLC (collectively "Urban") appeal the judgment against them in a copyright infringement case involving fabric designs. The district court granted plaintiff Unicolors Inc.'s motion for summary judgment on the issue of copyright infringement and, following a two-day trial, a jury found Urban liable for willful infringement. We reject Urban's arguments that the district court erred in its application of the subjective "intrinsic test" and in its conclusion that Unicolors had validly registered the Subject Design, and further conclude that there was substantial

evidence to support the jury's verdict for willful infringement.[1] We thus affirm.

## I. BACKGROUND

Unicolors is a Los Angeles company in the business of designing and selling fabrics to customers in the apparel markets. Unicolors typically registers copyrights in its designs to protect its investment and maintain a competitive advantage in its artwork.

In September 2008, Unicolors purchased the intellectual property rights to an original piece of work named "QQ-692"created by art studio Milk Print, LLC. It used a computer drafting utility program to reformat and make minor alterations to the QQ-692 design so that it could be printed onto bolts of fabric. It renamed this derivative design "PE1130" ("Subject Design"). On November 26, 2008, Unicolors registered its "Flower 2008" collection with the Copyright Office. Under "Contents Titles," Unicolors listed several designs, including QQ-692, and it attached an image of the design with the label "QQ-692 (PE1130)." Under "Material excluded from this claim," the application listed "Milk Print: QQ-692." Between 2008 and 2011, Unicolors sold approximately 14,000 yards of fabric bearing the Subject Design to customers in the United States.

Urban Outfitters is a specialty retail company operating over 500 stores worldwide. Century 21 is a department store that purchases products from Urban Outfitters. In late 2010, Urban Outfitters developed a women's dress (the "Accused

---

[1] In a memorandum disposition filed concurrently with this published opinion, we also reject Urban's arguments that the district court improperly relied on inadmissible evidence and abused its discretion when it ruled on a variety of evidentiary and procedural matters.

Dress") with a fabric design similar to the Subject Design. Unicolors sent a cease-and-desist letter to Urban's counsel two years later, asserting that the Accused Dress infringed Unicolors's PE1130 design. Unicolors then filed suit against Urban alleging copyright infringement of the Subject Design.

At summary judgment, the district court concluded that both defendants were liable for copyright infringement. The court held that Unicolors owns and properly registered a copyright in the Subject Design and that Urban created and sold garments bearing a design that was substantially similar to the Subject Design.

Following a two-day trial on the issues of willfulness and damages, a jury found that Urban had willfully infringed Unicolors's copyright in the Subject Design and awarded $164,400 in damages. The court then granted Unicolors $366,910.17 in fees and costs. Urban timely appealed the district court's grant of summary judgment and the jury's finding of willfulness.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010). In reviewing the jury's verdict, we ask whether the verdict is supported by substantial evidence. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008). "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Id.* (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

## III. DISCUSSION

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991). Urban asserts that the district court erred in concluding at summary judgment that these elements were met.

## A. Copying

A plaintiff must show "copying" of a protected work to prove copyright infringement. *Id.* If there is no direct evidence of copying, a plaintiff may prove this element through circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant's work. *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977), *superseded on other grounds by* 17 U.S.C. § 504(b). Circumstantial evidence of access is generally shown through either evidence of a "chain of events . . . between the plaintiff's work and defendants' access to that work" or evidence that "the plaintiff's work has been widely disseminated." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). If there is no evidence of access, a "striking similarity" between the works may allow an inference of copying. *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987).

In assessing whether particular works are substantially similar, or strikingly similar, this Circuit applies a two-part analysis: the extrinsic test and the intrinsic test. *Three Boys Music Corp.*, 212 F.3d at 485. The extrinsic test requires

plaintiffs to show overlap of "concrete elements based on objective criteria," *id.*, while the intrinsic test is subjective and asks "whether the ordinary, reasonable person would find 'the total concept and feel of the works' to be substantially similar," *Pasillas*, 927 F.2d at 442 (quoting *Krofft*, 562 F.2d at 1164). Because "substantial similarity is usually an extremely close issue of fact . . . summary judgment has been disfavored in cases involving intellectual property." *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984). However, "[a] grant of summary judgment for [the] plaintiff is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded." *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983).

## 1. The District Court's Substantial Similarity Analysis

At summary judgment in this case, the evidence regarding access was relatively limited. Unicolors conceded that it could not show a chain of events linking its design to Urban, but it contended that the design had been widely disseminated because it had sold 14,000 yards of the fabric bearing the design for a three-year period prior to Urban's creation of the Accused Dress. Alternatively, Unicolors argued that the court could grant summary judgment because the Subject Design and Accused Dress were so strikingly similar that Urban's design could only be attributed to copying.

The district court determined that there was insufficient evidence to conclude on summary judgment that the Subject Design had been widely disseminated. It focused instead on whether the designs were strikingly similar. The court reviewed Exhibits 3 and 5 submitted by Unicolors, which showed both the Subject Design as it was submitted to the

Copyright Office and photos of the Accused Dress. In applying both the extrinsic and intrinsic tests, the court analyzed the designs as follows:

> Extrinsically, [the two designs] both feature crowded arrangements of splayed floral or feather motifs. The presentations of the petal groups, the overlays, shading and layout are all nearly identical. The floral or feather motifs have nearly identical cracks and spaces. Both designs use ombre colors. The two designs have some minor differences: for example, the color palettes are different, with the Subject Design having a red-purple-white palette on a black background and the Accused Dress[] having a blue-yellow palette on a dark blue background. However those differences are little more than artifacts from imperfect copying of the fabric or minor modification.

> The intrinsic test also suggests that the two designs are extremely similar. Looking at two designs as a whole, the arrangements, shapes and details of all the floral or feather motifs are almost exactly the same. The colors are different, and only the Subject Design has white parts outlined in a different color, but otherwise the arrangement, shape, and details of all the floral or feather motifs appear to be almost exactly the same.

*Unicolors, Inc. v. Urban Outfitters, Inc.*, No. CV 14-01029 SJO (VBKx), 2015 WL 12733470, at \*7 (C.D. Cal. Feb. 17,

2015).  The court concluded that "the design on the Accused Dress is substantially similar to [the] Subject Design."  *Id.*

## 2.  The "Intrinsic Test"

Urban asserts that the district court erred by applying the subjective "intrinsic test."  Urban argues that only a jury may apply the intrinsic test, and that because a plaintiff must satisfy both the extrinsic and intrinsic tests to prove copying, copyright cases such as this one cannot be resolved at summary judgment.  Its position has been adopted by one district court.  *See Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*, No. 2:12-cv-01051-GMN-VCF, 2014 WL 553181, at *8 (D. Nev. Feb. 10, 2014).  But Urban's position cannot be reconciled with our prior recognition that, in exceptional cases, works may be so identical that summary judgment in favor of a plaintiff is warranted.  *Twentieth Century-Fox Film*, 715 F.2d at 1330 ("A grant of summary judgment for plaintiff is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded.").  This is one of those exceptional cases.

The district court detailed the various objective factors and elements that are common between the Subject Design and Accused Dress.  It correctly observed that both the Subject Design and Accused Dress include complex patterns with nearly identical orientation, spacing, and grouping of complicated florets and feathers.  Although the colors vary slightly, each has an ombre color pattern and uses color in similar ways for highlight and contrast.  Given the intricacy of the designs and the objective overlap between them, the district court properly concluded that the works are "so overwhelmingly identical that the possibility of independent creation is precluded."  *Id.*

Moreover, the cases relied upon by Urban are distinguishable. Urban relies primarily on *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012), and *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006), but neither of those cases dealt with works that were virtually identical. In each, the trial court granted summary judgment for defendants because it found that no reasonable jury could find the works substantially similar. In *L.A. Printex*, after conducting an independent review of the works, we determined that there were sufficient objective similarities between the works to create a genuine dispute of material fact under the extrinsic test. 676 F.3d at 852. We then held that "in light of our conclusion that the competing designs present a triable issue of fact under the extrinsic test . . . the issue of substantial similarity must go to the jury." *Id.* at 852. In *Funky Films*, we affirmed the district court's grant of summary judgment, concluding that there were insufficient objective similarities between the works to meet the extrinsic test and, as a result, to find substantial similarity. 462 F.3d at 1081. The rationale behind these decisions is clear: if the court concludes that there are sufficient articulable objective similarities between the two works for plaintiffs to meet the extrinsic test, it is inappropriate for the court to then make a subjective determination that the works, nevertheless, are not substantially similar in their total concept and feel. In other words, once the objective threshold is met, it is the role of the jury to make a nuanced subjective determination under the intrinsic test.

However, *L.A. Printex* and *Funky Films* dealt with situations in which there was a triable issue about whether the works were similar enough to suggest copying, not a situation in which the works are "so overwhelmingly

identical that the possibility of independent creation is precluded." *Twentieth Century-Fox Film*, 715 F.2d at 1330. Where the extrinsic similarity is so strong that the works are near duplicates save for superficial differences, the court may properly conclude that no reasonable jury could find that the works are not substantially similar in their overall concept and feel. In such a case, the court need not delve into a complex subjective analysis of the works to assess substantial similarity and does not risk supplanting the jury's subjective interpretation with its own.

Allowing district courts to grant summary judgment for plaintiffs in copyright cases plays an important role in preserving the effect and weight of Rule 56. When the works are "so overwhelmingly identical that the possibility of independent creation is precluded," *id.*, there is simply "no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a). As we have previously emphasized, "if Rule 56 is to be of any effect, summary judgment must be granted in certain situations." *Twentieth Century-Fox Film*, 715 F.2d at 1330 n.6. If courts were never permitted to grant summary judgment in favor of plaintiffs on the issue of copying, even for identical works, the effect of Rule 56 would be substantially diluted.

We conclude that a district court may grant summary judgment for plaintiffs on the issue of copying when the works are so overwhelmingly similar that the possibility of independent creation is precluded. The works at issue in this case meet this standard. The objective similarities between the works are stark: the shapes, motifs, arrangements, spacing, and colors of the images in each design are nearly identical. Because of the decisive objective overlap between the works, no reasonable juror could conclude under the intrinsic test that the works are not substantially similar in

total concept and feel.  Therefore, the district court properly granted summary judgment.[2]

### 3. Finding "copying" when there is no evidence of access

Urban asserts that even if a court finds striking similarity, it cannot find "copying" without some evidence of access. This argument is in direct conflict with the statement in *Baxter* that "[a]bsent evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying." *Baxter*, 812 F.2d at 423 (citing *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984)).

Urban attempts to dismiss *Baxter* and focuses on the Seventh Circuit's decision in *Selle v. Gibb*, in which the court explained that while striking similarity can lead to an inference of copying, "striking similarity is just one piece of circumstantial evidence tending to show access and must not be considered in isolation."  741 F.2d at 901.  Urban mistakenly asserts that *Selle* establishes that both access and striking similarity are required to find copying.  In *Selle*, the Seventh Circuit reviewed whether the district court had properly directed verdict for the defendants, overturning the jury's decision that plaintiff Ronald Selle's song "Let it End" infringed the Bee Gee's song "How Deep Is Your Love." *Id.* at 896.  In its discussion, the court expressed skepticism that a finding of "striking similarity" on its own could establish copying and suggested that plaintiffs must, at a minimum, show that there was some opportunity for the defendants to access its work.  *Id.* at 901 ("[I]f the plaintiff admits to having kept his or her creation under lock and key, it would

---

[2] The district court held that the works are substantially similar.  In our review of this issue *de novo*, we clarify that the works are not only substantially similar, but strikingly similar.

seem logically impossible to infer access through striking similarity."). However, the court ultimately concluded that striking similarity can allow a reasonable inference of access when "the similarity is of a type which will preclude any explanation other than that of copying." *Id.* at 905.

*Selle* is precisely in line with *Baxter* on this issue, which is not surprising given the *Baxter* court cited *Selle* in asserting that "[a]bsent evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying." *Baxter*, 812 F.2d at 423. Here, the works are virtually identical. Given the complexity of these works and the striking similarity between them, "[i]t was . . . unnecessary to consider the possibility that . . . [the Accused Dress] was the product of independent creation, coincidence, a prior common source, or any source other than copying." *Id.* at 424 n.2 (citing *Selle*, 741 F.2d at 901). In short, it is permissible to infer copying in this case, even absent evidence of access.[3]

## B. Whether the Subject Design was Included in Unicolors's Registration

Next, Urban argues that the district court erred in granting summary judgment because there were disputed facts as to whether the Subject Design was included in Unicolors's copyright registration. We disagree, because we

---

[3] Although plaintiffs need not show evidence of access to demonstrate copying where the works are strikingly similar, Unicolors did present evidence that the Subject Design was not kept under lock and key: Unicolors sold approximately 14,000 yards of fabric with the Subject Design in the years before Urban created the Accused Dress. Urban represented that it created its dress design by making alterations to a fabric swatch of unknown origin that it found in its studio. This evidence demonstrates that Urban could have accessed and copied the Subject Design.

conclude that the undisputed facts show that the Subject Design was registered as part of Unicolors's "Flower 2008" collection.

Unicolors was required to show registration as an element of an infringement claim. *See Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 615 (9th Cir. 2010) (citing *Reed Elsevier, Inc. v. Muchnick*, 599 U.S.166 (2010)).  A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership.  *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998).

The Subject Design was registered as part of a collection. The registration certificate for Unicolors's "Flower 2008" collection lists "Flower 2008(11)" as the title of the collection, and then lists the titles of several works within the collection.  Although the title list includes the name of Unicolors's source artwork, QQ-692, it does not include the name of the Subject Design, PE1130.  Moreover, the "Material excluded from this claim" section lists "Milk Print: QQ-692" among its entries.

Unicolors properly submitted a copy of PE1130, the Subject Design, with its application for the Flowers 2008 collection,[4] and neither party disputes that Unicolors owns all rights in PE1130 and its source work, QQ-692. Nonetheless, Urban asserts that there is a question of fact as to whether the Subject Design is included in the Flower 2008 registration because the name of PE1130 is not included on

---

[4] At oral argument, counsel for Urban asserted that Unicolors did not submit a copy of PE1130 with its Flowers 2008 application and instead only submitted a copy of QQ-692.  This assertion is not supported by the record.  The record shows that the copy of the Subject Design submitted to the Copyright Office included both names and was labeled as "QQ-692 (PE1130).TIF."

the certificate and because the Subject Design's source material, QQ-692, is listed as excluded material. We address these arguments in turn.

### 1. Omitting the title of a work in a registration collection

An applicant does not need to list the names of the component works in a collection to register them as long as it holds the rights to the component works. *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 683 (9th Cir. 2014). In *Alaska Stock,* we considered whether a stock photo company had properly registered copyright claims for the individual photos in a larger collection by registering the collection even though it did not list the names of the individual photos and only listed the names of some of the photos' authors. Following decisions from the Second, Third, Fourth, and Fifth Circuits, and the rule backed by the Copyright Office, we concluded that "collective work registrations [are] sufficient to permit an infringement action on behalf of component works, at least so long as the registrant owns the rights to the component works as well." *Id.* (quoting *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 598 (4th Cir. 2013)).

The record is clear that Unicolors submitted the PE1130 design as a component work in its application to register the Flower 2008 collection. Therefore, under *Alaska Stock*, Unicolors's registration of the Flower 2008 collection was sufficient to register the component design PE1130 even though the name of PE1130 was not listed on the registration itself.

Urban highlights that the registration certificate lists the names of the other works in the collection but excludes

PE1130, and argues that this creates a question of fact as to whether PE1130 is included in the registration at all.  Urban does not cite any precedent for this assertion, which runs contrary to our holding in *Alaska Stock* that it is not necessary to list the names of component works in a collection.  *See id.*  There is no reason that listing some but not all of the component works would create a question of fact as to whether the omitted works are covered by the registration.  Indeed, the registration certificate in *Alaska Stock* included the names of some, but not all, of the authors of the component works, but this had no bearing on our analysis or ultimate conclusion that the registration included all of the component works.  *See id.*

The PE1130 design was submitted to the Copyright Office as part of the Flower 2008 collection and is a valid component work in that collection.  The omission of PE1130 on the registration certificate has no impact on the status of PE1130's registration.

### 2. Listing the source work in the "materials excluded" section

Urban next argues that Unicolors did not properly register PE1130 because the source artwork was listed as an excluded work on the registration certificate.  This argument fails because Unicolors's infringement action is based on the derivative work and because good faith mistakes do not invalidate registration of a derivative work.

The Copyright Act defines a derivative work as "a work based upon one or more preexisting works, such as a[n] . . . art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted[, and] . . . consisting of editorial revisions, annotations, elaborations, or other modifications which, as a

whole, represent an original work of authorship." 17 U.S.C. § 101. The copyright protections for a derivative work are limited to the changes and contributions made by the derivative work's author and are distinct from the copyright protections for the source work. Section 103(b) of the Copyright Act states that "[t]he copyright [of a derivative] work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." 17 U.S.C. § 103(b). As this section makes clear, the author of a derivative work cannot obtain a copyright interest in the source work by registering a derivative work; rather, the author of the source work retains all rights and copyright protections in the source work independent of the creation or registration of any derivative works.

Presumably to make this distinction clear and to clarify the scope of a derivative work's copyright protections, the Copyright Act requires applicants registering a derivative work to provide "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." 17 U.S.C. § 409(9). The current application form[5] for visual arts registrants addresses Section 409(9) requirement via "Space 6." However, Space 6 is a minefield for applicants attempting to properly register a derivative work. Applicants are instructed to complete Space 6 if the work is a changed version, compilation, or derivative work "*and* if it incorporates one or more earlier works that have *already been published or registered for copyright, or that have fallen into the public domain*." The implication is that applicants should not fill out Space 6 if

---

[5] United States Copyright Office, Form VA (2016), https://www.copyright.gov/forms/.

their derivative work incorporates an earlier work that has not been published, registered, or is in the public domain.

All this is to say that Unicolors's claim that it inadvertently excluded QQ-692 is plausible. Although all works listed in Space 6 are eventually listed as "materials excluded from this claim" on the final registration certificate, Space 6 is the only place where applicants are able to identify source work. Thus, it was arguably reasonable for Unicolors to believe that it was required to list QQ-692 in Space 6 in order to comply with Section 409(9), even though it did not intend to exclude that work.

But regardless of whether Unicolors's mistake was reasonable, Unicolors's infringement claim is based on the derivative PE1130 design—not the source artwork. Thus, Urban's claim that QQ-692 was not registered is irrelevant because the registration of a derivative work "is independent of . . . any copyright protection in the preexisting material." 17 U.S.C. § 103(b). As discussed above, Unicolors properly registered PE1130 by submitting a copy of the design with its registration application for the Flower 2008 collection.

Nonetheless, Urban argues that because Unicolors excluded the source QQ-692 artwork, it somehow invalidated registration of the derivative PE1130 design. Contrary to Urban's contention, a registration error does not bar an infringement action unless "the inaccurate information was included on the application [ . . .] with knowledge that it was inaccurate" and the inaccuracy, "if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). Good faith mistakes in copyright applications do not preclude an infringement action. *See Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997) ("[I]nadvertent mistakes on registration certificates do not invalidate a copyright and

thus do not bar infringement actions, unless . . . the claimant intended to defraud the Copyright Office by making the misstatement."); *L.A. Printex*, 676 F.3d at 853 ("[A] misstatement or clerical error in the registration application, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting an infringement action." (alteration in original) (quoting 2 Nimmer on Copyright § 7.20[B][1])). Here, Unicolors's exclusion of QQ-692 was a good faith mistake. Moreover, it is clear that the mistake would not have caused the copyright office to refuse registration because the copyright office later approved Unicolors's request to correct the inadvertent exclusion.

In sum, Unicolors bases its infringement claim on PE1130, which was properly registered as part of a collection even though it was not named in the application. Moreover, because Unicolors's exclusion of QQ-692 was inadvertent and not fraudulent, the district court properly held that Unicolors had a valid registration in the Subject Design.

## C. The Jury's Willfulness Verdict

Finally, Urban seeks reversal of the jury's finding of willfulness. "[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) (quotation marks omitted) (quoting *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir.2011)). In reviewing a jury's verdict, the court asks whether the verdict is supported by substantial evidence.

*Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).

At trial, Unicolors presented evidence that Urban adopted a reckless policy with regard to copyright infringement because it made no attempt to check or inquire into whether any of the designs it used in its apparel were subject to copyright protections. Unicolors showed that Urban keeps thousands of fabric swatches at its design studio that it has purchased from art studios or taken from vintage clothing remnants; Urban's designers use these swatches to create thousands of apparel designs each year; Urban pays tens of thousands of dollars each year to purchase art and has a general awareness that fabric designs may be copyrighted; and that Urban does not take any affirmative action to determine if the specific designs it is using are copyrighted. Unicolors also showed that Urban did not attempt to discover the origin of the Subject Design in this case. These facts are sufficient to show that Urban acted with reckless disregard for the possibility that the fabric it sampled was protected by copyright, and such conduct is sufficient evidence of willful infringement to support the jury's verdict.

Urban responds that these facts cannot support a finding of willfulness because there is no evidence that Urban had *knowledge* that its conduct constituted infringement. This argument relies on an improperly strict standard of willfulness; "merely reckless behavior" can support a finding of willful infringement. *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008) (quotation marks omitted). As we have repeatedly held, a finding of willful infringement does not require a showing of actual knowledge; a showing of recklessness or willful blindness is sufficient. *See e.g.*, *Wash. Shoe Co.*, 704 F.3d at 674.

Urban also argues that its conduct was not reckless because it is unreasonable to expect companies like Urban to exhaustively investigate whether any particular fabric design is protected by a copyright registration. It asserts that trying to definitively prove whether any individual design is copyrighted would require it to contact every fabric manufacturer or attempt to review over 10,000 works deposited with the Copyright Office—even though such deposits are unavailable for viewing. It contends that requiring Urban to make this type of exhaustive inquiry would be absurd and that Urban's failure to engage in this type of investigation cannot result in a finding of willfulness. Urban's argument is inapposite. Regardless of how difficult it may be to determine whether particular designs have been registered with the Copyright Office, a party may act recklessly by refusing, as a matter of policy, to even investigate or attempt to determine whether particular designs are subject to copyright protections. Unicolors presented substantial evidence of such conduct to support a finding that Urban acted recklessly or with willful blindness to Unicolors's copyright. The jury's verdict finding willful infringement is therefore supported by substantial evidence.

In sum, none of Urban's arguments on appeal, discussed above and in the memorandum disposition, has any merit. The district court properly granted summary judgment on the issue of copyright infringement, and there was substantial evidence to support the jury's verdict.

Appellants shall bear the costs of appeal. *See* Fed. R. App. P. 39(a)(2).

**AFFIRMED.**