FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANNA BIANI, | No. 24-3949 |
| *Plaintiff - Appellant*, | D.C. No. 2:23-cv-03845-DMG-E |
| v. | |
| SHOWTIME NETWORKS, INC., a Delaware corporation; DOE 1, individual; DOE 2, individual; SHOWTIME DIGITAL, INC, a Delaware corporation; JOHN LOGAN, individual; DAVID NEVINS, | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted March 24, 2025
Pasadena, California

Filed September 8, 2025

Before: Jacqueline H. Nguyen and Salvador Mendoza, Jr.,

Circuit Judges, and Jeremy D. Kernodle, District Judge.[*]

Opinion by Judge Nguyen

## SUMMARY[**]

### Copyright

The panel affirmed the district court's dismissal, for failure to state a claim, of Anna Biani's action alleging that the Showtime television series *Penny Dreadful* infringed on three original characters that she created as a member of an online role-playing forum called "Murder & Roses: Victorian London Crime and Scandals."

The panel held that to state a claim for copyright infringement, a plaintiff must plausibly allege that she owns a valid copyright, and the defendant copied protected aspects of her work. The second prong contains two separate components: factual copying and unlawful appropriation. The copying component requires either direct evidence of copying or a showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying. Unlawful appropriation requires proof that the defendant copied enough of the plaintiff's protected expression of ideas or concepts to render the two works substantially similar. In

---

[*] The Honorable Jeremy D. Kernodle, United States District Judge for the Eastern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

reviewing the district court's ruling on a motion to dismiss, the court considers the extrinsic test for unlawful appropriation, which assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression.

As to copying, Biani did not challenge the district court's determination that she failed to plausibly allege evidence of access. Instead, she argued that similarities between the works were so striking as to preclude the defense of independent creation. The panel concluded that, in assessing the plausibility of Biani's "copying" allegations, the district court improperly filtered out unprotectable elements of the works, which is the extrinsic test for unlawful appropriation. The panel concluded, however, that this error was harmless because, even considering unprotectable elements of the two works, Biani's allegations were insufficient to plausibly infer copying. Any resemblance between the characters was not so extensive as to preclude the possibility of coincidence, independent creation, or prior common source.

The panel held that Biani's claim also independently failed under the "unlawful appropriation" analysis. Applying the extrinsic test and filtering out unprotectable elements, the panel agreed with the district court that Biani failed to allege substantial similarity in protectable expression.

**COUNSEL**

Raj Gandesha (argued), Michael Hamburger, and Hallie E. Kiernan, White & Case LLP, New York, New York; Michael Songer, White & Case LLP, Washington, D.C.; for Plaintiff-Appellant.

David Halberstadter (argued), Katten Muchin Rosenman LLP, Los Angeles, California, for Defendants-Appellees

**OPINION**

NGUYEN, Circuit Judge:

Plaintiff Anna Biani alleges that the television series *Penny Dreadful* (the "Show"), which aired for three seasons on Showtime, infringed on several original characters that she created as a member of an online role-playing forum called "Murder & Roses: Victorian London Crime and Scandals" (the "Forum"). The district court dismissed the complaint after finding that Biani failed to plausibly allege infringement. We affirm.

**I.**

**A.**

Biani joined the Forum in 2011, three years before the Show aired. The Forum is a website that allows its members to write posts and develop stories based on the theme of crime and scandal in the Victorian era. Members write stories using canonical characters from the Forum's theme—for example, Dorian Gray, Frankenstein, Sweeney Todd—

or, alternatively, create their own original characters. To create a new character, a member must post a character description and name an actor or actress who resembles their character.

Biani alleges that the Show infringed on three of her original characters: Charlotte Émilie Benoit ("Charlotte"), Frederick FitzClarence ("Frederick"), and Landon Otis Lloyd ("Landon"). Biani copyrighted these characters and her Forum posts. Biani described Charlotte as a slim, thirty-one-year-old "witch doctor" and "[a]ssassin," with "magical healing abilities." She has long, dark brown, wavy hair and is often dressed in matching jackets and skirts with a high-collared shirt and a veiled top hat. Charlotte was a disturbed child and is obsessed with "the fanaticism of occult." She is also a feminist who fights for women's rights. Biani named Eva Green as the actress who resembles Charlotte.

Frederick is portrayed as an "imposter" who always "seek[s] reassurance and approval," is "inappropriately sexually provocative," and has "histrionic personality disorder." Federick suffers from "seizures" and "dark thoughts" since childhood, which caused priests to believe that he was "possessed by evil spirits" and his family to abandon him.

Landon is a clairvoyant "explorer," who dreams about future events and "lives a nomadic lifestyle, constantly traveling from one country to another," including exploring the African continent. Landon's primary goal in traveling is to discover other individuals with clairvoyant powers. Landon leaves his nomadic lifestyle to live in London to find a lost half-sister and becomes a private investigator who solves mysteries using his "powers of clairvoyance."

**B.**

The Show began airing on Showtime in 2014. The Show is set in Victorian-era London and centers on two characters, Vanessa Malcolm ("Vanessa") and Sir Malcolm Murray ("Malcolm"), who grew up near one another. Vanessa is portrayed as a woman in her late twenties to early thirties and is played by Eva Green, the same actress whom Biani identified as resembling Charlotte. Malcolm is portrayed as a British explorer who has traveled throughout Africa. Vanessa was close friends with Malcolm's daughter, Mina. Their friendship ends after Vanessa discovers an adulterous relationship between Malcolm and her mother. Vanessa retaliates by seducing Mina's fiancé, which fractures their families' relationship and causes Vanessa mental anguish that leads to her being institutionalized. Vanessa is portrayed as a witch with supernatural abilities, which manifest as seizures and visions. After returning to London, Malcolm discovers that Mina is missing and persuades Vanessa to help search for Mina. The Show's first season depicts their search for Mina while they confront canonical Victorian-era characters and supernatural beings like Count Dracula.

**C.**

Biani sued Showtime Networks, Inc., Showtime Digital, Inc., John Logan, and David Nevins (collectively "Showtime"), alleging several claims, including copyright infringement. The complaint alleged that the Show infringed Biani's original characters by incorporating various aspects of her characters into the Show's characters of Vanessa and Malcolm. Biani further alleged that defendants or their agents had access to her work based on the similarities between her and the Show's characters.

Specifically, Biani alleged that Vanessa shared "substantially and/or strikingly similar" characteristics with Charlotte, Frederick, and Landon. Charlotte and Vanessa, for example, are similar in appearance, personality, and special abilities; they are similar in age, "beautiful," "pale," "seductive," non-conformist, and witches. Vanessa, like Frederick, is prone to seizures and plagued by "dark thoughts" and spirits. Vanessa and Landon have clairvoyant powers, and Malcolm and Landon are explorers.

## D.

The district court granted Showtime's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) because Biani failed to "plausibly allege that Defendants had a reasonable opportunity to copy her work." *Biani v. Showtime Networks, Inc.*, 2024 U.S. Dist. LEXIS 64125, at *11 (cleaned up). In determining that Biani failed to allege copying, the district court applied the extrinsic test, filtering out characteristics that it considered to be "stock aspects of the Victorian-era England genre." *Id.* at *14 (cleaned up). The district court then found that any remaining similarities between the characters were not "striking" enough to "preclude the possibility of independent creation." *Id.* at *15. The district court granted leave to amend but later dismissed the case with prejudice when Biani chose not to amend. This appeal followed.

## II.

## A.

To state a claim for copyright infringement, the plaintiff must plausibly allege that she owns a valid copyright, and the defendant copied protected aspects of her work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,

952 F.3d 1051, 1064 (9th Cir. 2020) (en banc) (citing *Rentmeester v. Nike, Inc.*, 883 F.3d at 1116–17 (9th Cir. 2018)).    The second prong contains two separate components: "copying" (or "factual copying") and illicit copying (or "unlawful appropriation").  *Rentmeester*, 883 F.3d at 1117.  While some of our prior cases have caused confusion by failing to distinguish between factual copying and unlawful appropriation, they are distinct concepts.  4 Nimmer on Copyright § 13D.08; *see Skidmore*, 952 F.3d at 1064.  We address each in turn.

**1.**

The copying component focuses on whether the defendant copied the plaintiff's protected work.  Proof of actual copying is required because "independent creation is a complete defense to copyright infringement."  *Skidmore*, 952 F.3d at 1064.  "When the plaintiff lacks direct evidence of copying, he can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying."  *Rentmeester*, 883 F.3d at 1117.

A showing of access requires "either evidence of a chain of events between the plaintiff's work and defendants' access to that work or evidence that the plaintiff's work has been widely disseminated."    *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017) (cleaned up).    Proof of "similarities probative of copying" may include both protectable and unprotectable elements.  *See Rentmeester*, 883 F.3d at 1117.  Because the focus at this stage is whether the defendant actually copied the plaintiff's work, *any* similarity between works may be considered so long as it is "probative" to this question.  *See id.* ("To prove copying, the similarities between the two works need not . . .

involve protected elements of the plaintiff's work.  They just need to be similarities one would not expect to arise if the two works had been created independently.").

If the plaintiff lacks evidence of access, then her claim survives only if the two works are so "strikingly similar" as to preclude "the possibility of independent creation." *Unicolors*, 853 F.3d at 985 (cleaned up); *see Skidmore*, 952 F.3d at 1064 ("This type of probative or *striking similarity* shows that the similarities between the two works are due to copying rather than coincidence, independent creation, or prior common source." (cleaned up) (emphasis added)). This is a high bar.  To be "striking," similarities must appear in a unique or complex context such that "it is *virtually impossible* that the two works could have been independently created."  4 Nimmer on Copyright § 13D.07 (emphasis added); *see, e.g.*, *Unicolors*, 853 F.3d at 985–87 (affirming summary judgment for the plaintiffs despite limited evidence of access because the dresses at issue shared "complex patterns with nearly identical orientation, spacing, and grouping of complicated florets and feathers," which made both dresses "so overwhelmingly similar that the possibility of independent creation is precluded" (cleaned up)).  A showing of striking similarity "creates a presumption of copying, which the defendant can then attempt to rebut by proving independent creation." *Rentmeester*, 883 F.3d at 1117 (citation omitted).   For example, no matter how strikingly similar the two works appear, the presumption is rebutted "if the plaintiff admits to having kept his or her creation under lock and key."  *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984).  Here, we consider both protectable and unprotectable elements as well.

**2.**

"[C]opyright law does not forbid all copying." *Rentmeester*, 883 F.3d at 1117. A plaintiff therefore must show, in addition to copying, "unlawful appropriation." This component requires proof that the defendant copied enough of the plaintiff's protected "expression of . . . ideas or concepts to render the two works 'substantially similar.'" *Id.* (cleaned up). Our circuit analyzes unlawful appropriation under the "extrinsic" and "intrinsic" tests. *Id.* at 1118. The extrinsic test "assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression," by "'filter[ing] out' . . . unprotectable elements," which include "ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Id.* "The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in total concept and feel." *Id.* (cleaned up). The extrinsic test is "the only test relevant in reviewing the district court's ruling on a motion to dismiss," as the intrinsic test is left to the fact-finder. *Id.*

**B.**

We now turn to the allegations in this case.

**1.**

Biani does not challenge the district court's determination that she failed to plausibly allege evidence of access. Instead, Biani argues that the "similarities between the works are so striking as to preclude independent creation." She contends that, in assessing the plausibility of her "copying" allegations, the district court improperly

filtered out unprotectable elements of the works, which is the "'extrinsic test' for *unlawful* []*appropriation*." We agree, *see supra*, but this error is harmless. Even considering unprotectable elements of the two works, Biani's allegations are insufficient to plausibly infer copying.

Biani's alleged "striking similarities" include Charlotte and Vanessa's "common physical appearance, traits and personalities . . . including their rejection of Victorian norms for women, their transgressive sexuality, their power to seduce and control men, their fraught relationships with religion and the Church, . . . their common vocation as witches," their relationships with "strikingly similar" assistants, and their depiction using the "likeness of Eva Green." Biani also alleges that Frederick and Vanessa share "common histories of seizures and the association of those seizures with possession by evil spirits," and Frederick and Landon share the "common plot arc of an explorer searching for a missing family member using the powers of clairvoyance." Biani essentially argues that Showtime blended attributes of her various characters in a cauldron to conjure Vanessa and Malcolm. But any resemblance between these characters is not so "extensive as to preclude the possibility" of "coincidence, independent creation, or prior common source." 4 Nimmer on Copyright § 13D.07 (cleaned up).

Even a cursory examination of the works' characters "exposes many more differences than similarities," such that none of the Show's characters are "strikingly similar" to their alleged counterparts from Biani's works. *Benay v. Warner Bros. Ent.*, 607 F.3d 620, 625 (9th Cir. 2010), *overruled in part on other grounds by Skidmore*, 952 F.3d at 1066. For example, although "[t]he most similar characters in the two works are" Vanessa and Charlotte, "the

differences between them at least equal the similarities." *Id.* at 626. Biani describes Charlotte as "wearing a man's attire," "never feel[ing] remorse after her homicides," and having a "strange habit of being over-protective and clingy toward newly matured boys and girls" in order to "taint[] them." Vanessa is never portrayed in this manner. Vanessa never murders anyone in the Show and expresses grief when Malcolm is forced to kill Mina to save Vanessa's life. On the surface, the Show's selection of Eva Green to play Charlotte appears striking. However, Biani and Showtime could have both independently identified Eva Green as an actress who could play a witch, as she played one in a well-publicized film that preceded both works.[1]

Biani also argues that "Charlotte and Vanessa both have relationships with otherworldly assistants . . . William Talbot in Biani's works and Fenton in the Show—whose depictions are strikingly similar." Biani describes both men as being "wild and vicious, lanky . . . , with a pale complexion, gaunt face, untidy hair and dark, deep-set eyes that indicate madness." However, William's relationship with Charlotte and Fenton's relationship with Vanessa are markedly different. William is a "vicious satanist" who serves "Charlotte as his 'master' and helps Charlotte dispose of corpses." In contrast, Fenton is captured by Vanessa,

---

1 *See* Paul Davidson, *Golden Compass Witch Chosen*, IGN (Aug. 2, 2006), https://www.ign.com/articles/2006/08/02/golden-compass-witch-chosen ("Variety reports that actress Eva Green has been selected to play Serafina, the powerful and beautiful queen of the witches . . . . It's another very prominent role for Green."); *The Oscars 2008*, BBC News (Feb. 25, 2008), http://news.bbc.co.uk/2/hi/entertainment/7262106.stm (listing *The Golden Compass* as winning an Academy Award).

never assists Vanessa, and refers to Count Dracula as his master.

Biani also compares Charlotte to Frederick and Landon to Malcolm. These comparisons fare no better. Unlike Frederick, Charlotte is not portrayed as an "[i]mposter" and "[a]ttention whore," who "constantly pretends to have the same interests and opinions [as] the person [she] is talking to." In Biani's stories, Landon has clairvoyant powers and "mostly . . . travels" from "one country to another" "in search for other people with clairsensing abilities." "[T]o be able to make ends meet," Landon "began working as a private investigator" and "settle[s] in London in hopes to find his half-sister." Malcolm has no clairvoyant powers, does not travel to find others with clairvoyant abilities, only travels through Africa, and is wealthy and does not need to "make ends meet." There is also no indication that Landon's half-sister was taken by supernatural forces, unlike with Mina.

Aspects of Biani's characters and the Show's characters may be "similar at the abstract level," but "an actual reading of the two works reveals greater, more significant differences and few real similarities." *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1078 (9th Cir. 2006), *overruled in part on other grounds by Skidmore*, 952 F.3d at 1066. These differences are fatal to Biani's claim that her work and the Show are so "strikingly similar" as to preclude the possibility of "independent creation, coincidence, a prior common source, or any source other than copying." *Unicolors*, 853 F.3d at 988 (quoting *Baxter v. MCA, Inc.*, 812 F.2d 421, 424 n.2 (9th Cir. 1987)).

**2.**

Biani's claim also independently fails under the "unlawful appropriation" prong.  As the district court explained, Biani's alleged similar characteristics are at a level of generality that is unprotectable.  For example, Biani focuses on Charlotte and Vanessa's shared characteristics of being similarly-aged, "strong," "beautiful," and "pale brunettes," who "dress in Victorian attire," and engage in witchcraft and "deviant behavior."  *Biani*, 2024 U.S. Dist. LEXIS 64125, at *14.  "[B]asic plot ideas," such as a woman rejecting the norms of her era (and therefore having fraught relationships with the church and nonmarital relationships), are unprotectable.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 824 (9th Cir. 2002); *see id.* (finding as unprotectable "the general premise of a child, invited by a moon-type character, who takes a journey through the night sky and returns safely to bed to fall asleep").  In sum, applying the "extrinsic test" and filtering out unprotectable elements, we agree with the district court that Biani fails to allege "substantial similarity in protectable expression." *Skidmore*, 952 F.3d at 1064.

**AFFIRMED.**