**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION; PHOENIX ENTERTAINMENT PARTNERS, LLC,<br>*Plaintiffs-Appellants*, | No. 14-17229<br><br>D.C. No.<br>2:12-cv-02631-NVW |
| v. | OPINION |
| WIRED FOR SOUND KARAOKE AND DJ SERVICES, LLC; ERNEST Z. MCCULLAR,<br>*Defendants-Appellees.* | |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted December 12, 2016
San Francisco, California

Filed January 18, 2017

Before: Susan P. Graber and Andrew D. Hurwitz, Circuit
Judges, and Richard F. Boulware,[*] District Judge.

Per Curiam Opinion

---

[*] The Honorable Richard F. Boulware, United States District Judge
for the District of Nevada, sitting by designation.

# SUMMARY[**]

## Lanham Act

The panel affirmed the district court's dismissal of claims for trademark infringement and unfair competition brought under the Lanham Act by a producer of karaoke music tracks.

The plaintiff alleged that the defendants performed karaoke shows using unauthorized "media-shifted" files that had been copied onto computer hard drives from the compact discs released by the plaintiff. Agreeing with the Seventh Circuit, the panel held that the plaintiff did not state a claim under the Lanham Act because there was no likelihood of consumer confusion about the origin of a good properly cognizable in a claim of trademark infringement.

In a concurrently filed memorandum disposition, the panel reversed the district court's summary judgment on a claim for breach of a settlement agreement. Judge Hurwitz concurred in part and dissented in part from the memorandum disposition.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

James M. Harrington (argued), Harrington Law P.C., Pineville, North Carolina, for Plaintiff-Appellant.

Lorraine Morey (argued), Morey Law PLLC, Phoenix, Arizona, for Defendants-Appellees.

**OPINION**

PER CURIAM:

Karaoke is a "form of entertainment, originating in Japan, in which a person sings the vocal line of a popular song to the accompaniment of a pre-recorded backing tape, and the voice is electronically amplified through the loudspeaker system for the audience." *OED Online* (Dec. 2016), http://www.oed.com/view/Entry/243613. Plaintiff Slep-Tone Entertainment Corporation[1] produces karaoke music tracks. The tracks are marketed under the trademark "Sound Choice." Plaintiff releases them on compact discs encoded in a format known as "CD-G," which accompanies karaoke music with graphics, lyrics, and singing cues when played on compatible equipment.

Computer users are capable of copying the content of these CD-Gs onto computer hard drives as digital files; Plaintiff refers to this process as "media-shifting," but it is also popularly known as "ripping." Plaintiff acknowledges

---

[1] On appeal, the court has added Phoenix Entertainment Partners, LLC, Slep-Tone's successor-in-interest, as an additional party. We refer to these entities collectively as "Plaintiff."

the convenience of digital files for karaoke operators (who need not use numerous CD-Gs during a performance), but also reports that this widespread practice, when combined with unauthorized file-sharing, "nearly drove [the company] out of business." In the past, Plaintiff "opposed all commercial media-shifting." Today, it allows the practice within the confines of a four-point "media-shifting policy" requiring that users make only one digital copy per source CD-G; that the physical media used to create the digital files are kept "on the shelf" unused; that users notify Plaintiff if they intend to create media-shifted copies; and that users submit to auditing for compliance with these conditions.

Defendants Ernest Z. McCullar and his business, Wired for Sound Karaoke and DJ Services, LLC, operate a karaoke business in the Phoenix area. As alleged in the complaint, Defendants use Plaintiff's Sound Choice tracks. In 2009, Plaintiff learned that Defendants were using unauthorized media-shifted files instead of Plaintiff's original CD-Gs. Plaintiff filed a federal action against Defendants, alleging trademark infringement. *See Slep-Tone Entm't Corp. v. Gorrel*, No. 2:09-cv-01462-HRH (D. Ariz. July 14, 2009). The parties entered a settlement agreement in 2010.

In the present action, Plaintiff once again claims that Defendants are performing karaoke shows using unauthorized media-shifted files. Plaintiff alleges, among other things, trademark infringement under the Lanham Act. The district court granted Defendants' motion to dismiss as to the claims for trademark infringement and unfair competition, holding

that "[t]his attempt to stuff copyright claims into a trademark container fails." Plaintiff timely appeals.[2]

We "review de novo the grant of a motion to dismiss." *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 n.5 (9th Cir. 2016). We agree with the district court that Plaintiff has not stated a claim under the Lanham Act, and we therefore affirm that holding.

Plaintiff argues that, by "media-shifting" Plaintiff's tracks from physical CD-Gs to digital files and performing them without authorization, Defendants have committed trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125. The Act creates a federal civil cause of action for unauthorized use of a registered trademark. The Lanham Act's provision concerning ordinary trademark infringement, known as section 32, defines infringement in relevant part as follows:

> Any person who shall, without the consent of the registrant—

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause

---

[2] The district court also granted summary judgment to Defendants on a claim for breach of the settlement agreement. In a concurrently filed memorandum disposition, we reverse that decision and remand for further proceedings.

confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1). The Lanham Act's provision on unfair competition, section 43, provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such

person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Both legal theories share a common inquiry: "[w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'" *New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir. 1979). Here, we conclude that there is not.

Plaintiff's theory is that, because the media-shifted files display Plaintiff's trademarks and trade dress when performed, consumers will be confused about their origin—believing that the tracks originated with Plaintiff, rather than with Defendants. But this theory does not involve consumer confusion about the source of an appropriate "good," as that concept has been defined by the Supreme Court. Instead, it alleges possible confusion over the source of content. Analyzing the Lanham Act's unfair competition provision, 15 U.S.C. § 1125, the Supreme Court has held that the statutory phrase "origin of goods" must "refer[] to the producer of the tangible goods that are offered for sale, and

not to the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). The concept of origin is "incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id.* at 31–32. And, although the Supreme Court was interpreting the "unfair competition" provision in section 43 of the Lanham Act, "'the same standard' applies to both registered and unregistered trademarks." *See, e.g.*, *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000) (explaining that section 32 "covers only registered marks," whereas section 43 "protects against infringement of unregistered marks and trade dress as well as registered marks").

Perhaps in view of this limitation, Plaintiff frames the dispute as concerning a *new* tangible good bearing its trademark, describing the new digital files that Defendants allegedly created from Plaintiff's CD-Gs as the goods about which consumers may be confused. But, although Defendants may, in some sense, have created a new good by copying Plaintiff's CD-Gs to hard drives, it is still not a *relevant* good under the Lanham Act. We agree with the Seventh Circuit, which held, in addressing a similar claim by this very Plaintiff against another karaoke operator, that "the 'good' whose 'origin' is material for purposes of a trademark infringement claim is the 'tangible product sold in the marketplace' rather than the creative content of that product." *Phx. Entm't Partners v. Rumsey*, 829 F.3d 817, 828 (7th Cir. 2016) (quoting *Dastar*, 539 U.S. at 31). Karaoke patrons who see Defendants' performances of Plaintiff's karaoke tracks will not be confused about "the source of the tangible good sold in the marketplace." *Id.* at 829. Consumers are not

aware of the new, media-shifted digital files about which Plaintiff asserts confusion.

When the claim is more accurately conceived of as attacking unauthorized copying, *Dastar* requires us to avoid recognizing a "species of mutant copyright law" by making such claims cognizable under the Lanham Act. 539 U.S. at 34. Thus, the Seventh Circuit held that "the good that Slep-Tone alleges the defendants are improperly passing off as a Slep-Tone product is the unauthorized digital copy of the . . . track." *Rumsey*, 829 F.3d at 828. But "[i]t [was] not alleged, nor [did] the briefing suggest, that the patrons see the physical good in question—the digital file that presumably resides on the hard drive of the bar's karaoke system." *Id.* If there is any confusion, it does not concern the source of the goods, as the Lanham Act requires. Consumers never see the digital files and Defendants neither sell them nor make representations about their source medium. Accordingly, Defendants do not use the Sound Choice marks "in connection with the sale, offering for sale, distribution, or advertising" of the files under 15 U.S.C. § 1114(1)(a) or "in connection with" the files under § 1125(a)(1). Instead, Defendants make allegedly unauthorized use of the *content* of Plaintiff's karaoke tracks, which *Dastar* precludes as a trademark claim. As the Supreme Court explained, "[t]he words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." *Dastar*, 539 U.S. at 32–33.

Plaintiff does not plausibly allege consumer confusion over the origin of a good properly cognizable in a claim of trademark infringement. We affirm the district court's dismissal of Plaintiff's trademark claims.

**AFFIRMED** in part; **REVERSED** in part and **REMANDED**. The parties shall bear their own costs on appeal.