**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| OTR WHEEL ENGINEERING, INC.; BLACKSTONE/OTR, LLC; F.B.T. ENTERPRISES, INC., *Plaintiffs-Appellees/ Cross-Appellants*, v. WEST WORLDWIDE SERVICES, INC.; SAMUEL J. WEST, individually, and his marital community; SSL CHINA, LLC; QINGDAO STW TIRE CO. LTD.; SSL HOLDINGS, INC., *Defendants-Appellants/ Cross-Appellees.* | Nos. 16-35897 16-35936 D.C. No. 2:14-cv-00085-LRS OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted March 7, 2018
Seattle, Washington

Filed July 24, 2018

Before: Johnnie B. Rawlinson, Richard R. Clifton,
and Morgan Christen, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Lanham Act

The panel affirmed the district court's judgment after a jury trial, holding defendants liable for reverse passing off under the Lanham Act.

The parties were competitors in the business of selling industrial tires. Defendant West asked a supplier of plaintiff OTR to provide him with sample tires from OTR's molds, and he asked the supplier to remove OTR's identifying information from the tires so that he could use the tires to obtain business from one of OTR's customers.

The panel held that West could be found liable for reverse passing off because he did not simply copy OTR's intellectual property, but rather passed off genuine OTR products as his own.

The panel affirmed the district court's conclusion that West did not establish that OTR committed fraud on the United States Patent and Trademark Office. The panel confirmed that fraud on the PTO must be established by clear and convincing evidence.

The panel affirmed the district court's order denying a new trial on the issue of trade dress validity.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed the district court's rejection of a proposed jury instruction asserting a claim for infringement of an unregistered trade dress. The panel explained that a registered claim converts to an unregistered claim if the registration is invalidated; thus, a plaintiff does not need to separately plead the identical unregistered claim. But where the unregistered claim would cover something more than the registered claim, a plaintiff must put a defendant on notice of such through the pleadings.

The panel addressed additional issues in a concurrently filed memorandum disposition.

## COUNSEL

Christine Marie Lebrón-Dykeman (argued), R. Scott Johnson, and Jonathan L. Kennedy, McKee Voorhees & Sease P.L.C., Des Moines, Iowa; John J. White Jr. and Kevin B. Hansen, Livengood Alskog PLLC, Kirkland, Washington; for Defendants-Appellants/Cross-Appellees.

Joel David Bertocchi (argued), Kimberly A. Jansen, and Jeffrey S. Dixon, Hinshaw & Culbertson LLP, Chicago, Illinois; Robert J. Carlson, Lee & Hayes PLLC, Seattle, Washington; for Plaintiffs-Appellees/Cross-Appellants.

**OPINION**

CLIFTON, Circuit Judge:

OTR Wheel and Samuel West are competitors in the business of selling industrial tires.[1] West asked one of OTR's suppliers to provide him with sample tires from OTR's molds, and he asked the supplier to remove OTR's identifying information from the tires. West wanted to use the tires to obtain business from one of OTR's customers. OTR sued West, asserting various claims under the Lanham Act and state law.

The primary issue before us is whether West can be found liable for reverse passing off under the Lanham Act. Pursuant to the Supreme Court's opinion in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), a claim for reverse passing off cannot be brought to prevent the copying of intellectual property. We conclude that West did not simply copy OTR's intellectual property but passed off genuine OTR products as his own, so we affirm the judgment holding him liable for reverse passing off.

---

[1] This case involves multiple plaintiffs and multiple defendants. Plaintiffs are OTR Wheel Engineering, Inc.; Blackstone/OTR, LLC; and F.B.T. Enterprises, Inc. Defendants are West Worldwide Services, Inc.; Samuel J. West, individually, and his marital community; SSL China, LLC; Qingdao STW Tire Co. Ltd.; and SSL Holdings, Inc. In briefing, the parties refer to each side generally as "OTR" for the Plaintiffs/Appellees/Cross-Appellants and "West" for the Defendants/Appellants/Cross-Appellees. Where Plaintiffs prevailed, the judgment was for all Plaintiffs against all Defendants. Likewise, where Defendants prevailed, the judgment was for all Defendants against all Plaintiffs. There is no need to draw any distinctions among plaintiffs or among defendants. We therefore follow the parties in referring to each side simply as OTR and West.

In this opinion, we also address other issues raised regarding the Lanham Act.  In particular, we affirm the district court's conclusion that West did not establish that OTR had committed fraud on the United States Patent and Trademark Office (PTO).  In doing so, we confirm that fraud on the PTO must be established by clear and convincing evidence.  We also affirm the district court's order denying a new trial on the issue of trade dress validity, giving us cause to explain how a finding of fraud on the PTO affects a plaintiff's burdens in establishing a trademark claim.  Finally, we affirm the district court's rejection of a proposed jury instruction asserting a claim for infringement of an unregistered trade dress.  We explain that a registered claim converts to an unregistered claim if the registration is invalidated.  Thus, a plaintiff does not need to separately plead the identical unregistered claim.  But where the unregistered claim would cover something more than the registered claim, a plaintiff must put a defendant on notice of such through the pleadings.

The other issues raised by the parties—those that do not touch on the Lanham Act—do not warrant discussion in a precedential opinion.  We address those remaining issues in a concurrently filed memorandum disposition.

## I.  Background

### A.  Statutory Framework

The Lanham Act prohibits conduct that would confuse consumers as to the origin, sponsorship, or approval of goods or services.  *See Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017); *see also TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,

532 U.S. 23, 28 (2001).  To prevent consumer confusion, the Act allows the producers of goods and services to enforce trademark rights.  15 U.S.C. §§ 1114, 1125(a); *see also  Wal-Mart Stores, Inc. v. Samara Bros*., 529 U.S. 205, 209–10 (2000).  A trademark is "any word, name, symbol, or device . . . [used or intended to be used] to identify and distinguish [goods] from those manufactured or sold by others and to indicate the source of the goods."  15 U.S.C. § 1127.  In addition, the Lanham Act protects more than words and symbols.  It also protects a product's "trade dress," which includes the packaging, dressing, and design of a product. *TrafFix Devices*, 532 U.S. at 28; *Wal-Mart*, 529 U.S. at 209.

## B.  Factual History

OTR sells tires for industrial use.  One of OTR's products is a tire called the "Outrigger."  OTR obtained a registered trademark on the Outrigger name and a registered trade dress on the Outrigger tire tread design.  OTR partnered with a company called Solideal to make size "355" Outrigger branded tires for the Chinese market. The 355-size tires are commonly used for aerial work platforms, which are mobile platforms sometimes referred to as "cherry pickers." In order to produce the 355-size tires in China, Solideal contracted with a plant operated by a Chinese company called Superhawk.

West is in the same business as OTR, and he wanted to sell tires to one of OTR's customers, Genie.  In December of 2011, West began discussions with Superhawk, the Chinese manufacturer, about making a 355-size tire for West to sell to Genie.  In the spring of 2012, West asked Superhawk for 16 of the 355-size tires for testing by the potential customer. Superhawk advised West that it would take 50 days to make

a mold for West's tires.  West responded, in writing, "I really need it much sooner. . . . Don't you make this size for Solideal [OTR's partner]? . . . Could you buff off the Solideal name on the sidewall or just remove the plate and let me get the tire tested?"

Superhawk initially refused, saying that it would be "dangerous" to use Solideal's mold because Superhawk had an agreement with Solideal.  West responded by asking, "Will your mold be the same as the [S]olideal mold? If we take out the nameplate and all the sidewall information, nobody will know."  West then asked Superhawk to make 50 tires for Solideal even though no Solideal order had been placed.  Superhawk stated that it would make the 355-type tires "shortly."

In May of 2012, Superhawk confirmed to West that Superhawk's 355-size tires were OTR Outrigger tires made for Solideal.  In the summer of 2013, Genie stopped buying the 355-size tires from OTR and began buying them from West.

## C.  Procedural Background

OTR brought Lanham Act claims against West for trade dress infringement, trade dress counterfeiting, and reverse passing off.  OTR also asserted state law claims under the Washington Consumer Protection Act (WCPA), for trade secret misappropriation, and for tortious interference with various contracts and business relationships.

The case went to trial, with mixed results.  The jury found West liable for reverse passing off in violation of the Lanham Act.  The jury also found West liable for violating the WCPA

and for tortiously interfering with a contract between Solideal and Superhawk, as well as with business relationships involving OTR, Genie, Solideal, and Superhawk. West was not found liable for trade dress infringement, trade dress counterfeiting, trade secret misappropriation, or tortious interference with a contract between OTR and Genie.

The jury also found that OTR's claim for protected trade dress on its tire tread was invalid and that the trade dress registration had been obtained through fraud on the PTO. On a post-trial motion, the district court set aside the jury's determination that OTR had obtained its trade dress registration through fraud. The court otherwise entered judgment based on the jury's findings, including the finding that the protected trade dress claim was invalid. The court directed the PTO to cancel OTR's trade dress registration.

For the claims on which OTR prevailed, the jury determined that OTR should be awarded actual damages in the amount of $967,015. In addition to those damages, the judgment entered by the district court awarded prejudgment interest to OTR under state law and post-judgment interest at the rate authorized by 28 U.S.C. § 1961(a). The court maintained a preliminary injunction against West pending the outcome of this appeal.

In a separately filed memorandum disposition, we reverse the district court on the issue of prejudgment interest, vacate the preliminary injunction, and affirm as to all the remaining issues.

## II. Discussion

The parties raise four issues concerning the Lanham Act. First, West challenges the jury's finding that West is liable for reverse passing off OTR's tires as his own.  West argues that the verdict is precluded by *Dastar*, in which the Supreme Court held that a reverse passing off claim cannot be brought to prevent the copying of intellectual property.  Thus, we must determine whether West's conduct amounted to mere copying.  We conclude that, instead of simply copying OTR's design, West used tires from an anticipated OTR order and passed those tires off as his own.  We also address the parties' arguments regarding waiver and whether the jury's verdict was supported by substantial evidence.

Second, the jury found that OTR had obtained its tire tread trade dress registration through fraud on the PTO, but the district court set that finding aside as a matter of law. West challenges the district court's order.  In considering West's challenge, we confirm that fraud on the PTO must be established by clear and convincing evidence.  We agree with the district court that West did not establish fraud by clear and convincing evidence.

Third, the jury determined that OTR's protected trade dress claim was invalid.  OTR challenges that verdict, arguing that it was driven by the jury's finding of fraud on the PTO.  Given that the court set aside the fraud finding, OTR argues that the court should have also set aside the invalidity finding.  In addressing OTR's arguments, we explain how a finding of fraud on the PTO affects a plaintiff's burdens in establishing a trademark claim.  We conclude that the jury's finding of invalidity was supported by substantial evidence.

Fourth, in addition to a claim based on its registered trade dress, OTR submitted a proposed jury instruction asserting a claim for infringement of unregistered trade dress. The trial court rejected the proposed instruction on the grounds that OTR had not pled an unregistered trade dress claim. OTR challenges the court's order, arguing that it had pled an unregistered claim that encompassed "something more" than what was covered by the registered claim. We hold that the trial court did not abuse its discretion in rejecting the jury instruction. In the process, we note that the unregistered claim was only precluded because it asserted "something more" than the registered claim and OTR had not made clear in its pleadings that it asserted something more. A claim does not need to be registered to be enforceable, and if a registration is defeated it merely shifts the parties' burdens at trial.

## A.  False Designation of Origin: Reverse Passing Off

The jury found West liable for "reverse passing off" an Outrigger tire as his own development tire. West challenges that verdict.

### 1.  Standard of Review

A jury's verdict must be upheld if supported by substantial evidence. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017). Substantial evidence is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion from the same evidence. *Id.* The credibility of the witnesses and the weight of the evidence are issues for the jury and are generally not subject to appellate review. *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 651 n.5 (9th Cir. 2005). We have a duty under the

Seventh Amendment to harmonize a jury's answers on a special verdict form if a fair reading allows for it. *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 771 (9th Cir. 2005).

### 2.  Waiver

In challenging the verdict for reverse passing off, West argues: 1) the claim was precluded by the Supreme Court's holding in *Dastar*; 2) there was not substantial evidence that he removed the identifying information from an Outrigger tire; and 3) OTR did not establish a likelihood of confusion. OTR responds in part by arguing that West waived his arguments regarding *Dastar* and the likelihood of confusion by failing to raise them in a motion for judgment as a matter of law before the case went to the jury.

Rule 50 governs the timing of a motion for judgment as a matter of law.  Pursuant to Rule 50(a), a "motion for judgment as a matter of law may be made at any time before the case is submitted to the jury."  Fed. R. Civ. P. 50(a)(2). If the court does not grant the motion, Rule 50(b) allows a party to file a renewed motion for judgment as a matter of law after the judgment is entered.  Fed. R. Civ. P. 50(b).  But "[f]ailing to make a Rule 50(a) motion before the case is submitted to the jury forecloses the possibility of considering a Rule 50(b) motion."  *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009).

Likewise, a "party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). Such arguments are also waived for purposes of appeal.  *See*

*Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1345 (9th Cir. 1985). In his Rule 50(a) motion, West argued that OTR had failed to prove that West removed the Outrigger mark from tires in commerce. West did not mention *Dastar* or the likelihood of confusion. Thus, these arguments would normally be waived.

But if a party fails to object to a Rule 50(b) motion on the basis of waiver, then the party waives its waiver defense. *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 838–39 (9th Cir. 2003) ("[W]here a defendant does not object to an improperly-filed Rule 50(b) motion, and does not raise the issue of default for failure to abide Rule 50(a) before the trial court, then the procedural flaw in the Rule 50(b) motion is waived . . . ."), *abrogation on other grounds recognized in Thomas v. Dillard*, 818 F.3d 864, 885 (9th Cir. 2016); *see also Williams v. Runyon*, 130 F.3d 568, 572 (3d Cir. 1997) (citing six other circuits for the same holding). When West presented his *Dastar* and likelihood-of-confusion arguments to the district court in his post-trial Rule 50(b) motion, OTR did not raise waiver in its opposition. Thus, OTR has waived its waiver defense, and we will consider all three of West's arguments.

### 3.   Merits

Section 43(a) of the Lanham Act prohibits a person from using "in commerce any word, term, name, symbol, or device . . . which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods." 15 U.S.C. § 1125(a). The term "origin" in section 43(a) lends itself to two causes of action for "passing off" based on false designation of origin: passing off and reverse passing off. "Passing off . . . occurs when a producer misrepresents his own goods or services as someone

else's.  'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own." *Dastar*, 539 U.S. at 27 n.1 (citation omitted).

### a.    Effect of the Supreme Court's holding in *Dastar*

West argues that the claim for reverse passing off was precluded by *Dastar*.   In *Dastar*, the Supreme Court explained that the term "origin" in section 43 "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.  Thus, a reverse passing off claim cannot be brought to prevent the copying of intellectual property.   Copying is dealt with through the copyright and patent laws, not through trademark law.  *Id.* at 33–34.

West argues that, at worst, by using OTR's mold, he copied OTR's tire instead of passing off a genuine Outrigger as his own.  We do not need to determine, however, whether use of the OTR mold would create a mere copy or a genuine OTR product.  There was evidence that West did pass off actual OTR tires.  West asked Superhawk to make tires to fill an anticipated order for Solideal, OTR's partner, in advance and to hold most of the tires until Solideal placed the order. West wanted to take ten of these OTR tires to provide to Genie as his own development tires.[2]   The jury could therefore conclude that the development tires were taken from part of an anticipated OTR (Solideal) order and were genuine OTR products, not just copies.

---

[2] In his email, West wrote: "Any chance you can risk making the 50 pcs and then sit on the 40 tires until they ask?"

To support his argument that he only copied OTR's tire, West cites the Sixth Circuit's opinion in *Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 796 F.3d 576 (6th Cir. 2015).  In *Kehoe*, a manufacturer produced goods for a customer.    After  filling  the  customer's  order,  the manufacturer continued to use the same molds to manufacture additional units that it could sell in competition with the customer.  *Id.* at 580.  The Sixth Circuit determined that the manufacturer's conduct constituted copying and that a reverse passing off claim was therefore precluded by *Dastar*.  *Id.* at 587.  In *Kehoe*, though, the manufacturer did not pass off products that had been produced as part of the customer's order.  West did.  "The right question, *Dastar* holds, is whether the consumer knows who has produced the finished product."  *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp*., 419 F.3d 576, 581 (7th Cir. 2005).  Here, the product was produced for OTR, and West attributed it to himself.[3]

> b.  Removal  of  the  Outrigger's  identifying information

West argues that there was not substantial evidence to support the jury's conclusion that he removed the Outrigger identifying information from the sidewall of the development tire.  We disagree.

West asked Superhawk for some tires for testing. Superhawk told West that it would take 50 days to make a mold for West's purposes.  West responded, "I really need it much sooner. . . . Don't you make this size for Solideal? . . .

---

[3] Accordingly, we do not need to determine whether we agree with the holding in *Kehoe*.

Could you buff off the Solideal name on the sidewall or just remove the plate and let me get the tire tested?"

Superhawk told West that it would be "dangerous" to use Solideal's mold because Superhawk had an agreement with Solideal. West persevered in his request, however. He asked, "Will your mold be the same as the [S]olideal mold? If we take out the nameplate and all the sidewall information, nobody will know." He asked Superhawk to make 50 Solideal tires even though an order for those tires had not been placed yet by Solideal. Superhawk responded that the tires would be made "shortly."

At trial, West's expert identified a number of areas where spring plates had been used in the mold for West's development tire. Spring plates are put into molds for the purpose of imprinting information onto tires. OTR's expert testified that the spring plate indentations corresponded to the location of information that would, if it appeared on the tire, identify the tire as an OTR tire.

These emails and this testimony constituted substantial evidence that West used an Outrigger mold for his development tire and added blank spring plates over areas that would have imprinted the Outrigger's identifying information onto the tires. West argues that he did not know that the tires were Outriggers when he asked Superhawk to remove the identifying information. But before West used the development tire, he had an email exchange with Superhawk confirming that the 355-size tire was "Solideal branded the OTR Outrigger."

West also argues that the evidence did not support a conclusion that a plate had been placed in the mold over the

Outrigger identifying information.  West contends that such a plate would leave obvious marks on the mold but that OTR did not produce the actual mold for trial.  OTR responds that the molds were with Superhawk (the Chinese manufacturer), not with OTR or Solideal.  Thus, OTR did not control the mold, and West provided no definitive evidence to the contrary.  West raised this same argument with the jury, but the jury apparently was not persuaded.  There was sufficient evidence to support the jury's finding.

West next points to his expert's testimony, arguing that a blank spring plate would have left deeper imprints on the tire. The jury was not required to believe that testimony, however. It was up to the jury to weigh witness testimony and compare it to the rest of the evidence. *Watec Co.*, 403 F.3d at 651 n.5.

West also cites an internal Solideal email in which one individual related a discussion with Superhawk.  Superhawk told Solideal that it did not use Solideal's mold.  The jury could have discounted this self-serving statement by Superhawk, especially since the jury saw Superhawk's email to West stating that it would be "dangerous" to use Solideal's mold due to Superhawk's agreement with Solideal.  The jury could rationally conclude that Superhawk was not candid in telling Solideal what it had done for West out of fear of losing business or of legal liability.

Finally, West argues that his development tire was structurally different than an Outrigger, and therefore the development tire was not a genuine Outrigger.  This argument fails because, as noted above, the jury saw enough evidence to conclude that the development tires were taken from an order that was intended for OTR and Solideal.  The argument also fails because the structural evidence came in through an

OTR expert witness who testified that he compared the structure of West's development tire, which was made in China by Superhawk, with the structure of an Outrigger made in Thailand by someone else.  The expert testified that the structural differences could have been explained by differences in manufacturing between countries and between manufacturers.  He also testified that the difference in the internal structure of the tires did not affect the tire tread pattern.

### c.  Likelihood of consumer confusion

To prove a claim under section 43(a), a plaintiff must establish a likelihood of consumer confusion.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).  Thus, in order to prevail on its claim for reverse passing off, OTR was required to prove that consumers would likely be confused as to the origin of Outrigger tires that had their identifying information removed.  The likelihood-of-confusion inquiry "generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir.2012).  Thus, the jury had to determine whether a hypothetical consumer would likely be confused.  Evidence of actual confusion was not required.  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011).  The jury was shown pictures of an OTR production tire and the West development tire.  Comparing the two tires, a reasonable jury could conclude that consumers would be confused by tires that lack the identifying information.

West argues that Genie, the customer, was not actually confused. West's argument fails for two reasons: First, in his briefing for us, West argues that the development tire was not an Outrigger and that Genie "knew" the tire was not an Outrigger. Thus, West concedes that Genie thought the tire was not a genuine Outrigger. Given that the jury concluded that the tire was an Outrigger, West effectively concedes actual confusion. Second, the only evidence cited by West in support of this argument was proposed evidence that was not actually admitted at trial. It was, instead, excluded by the district court, and the exclusion was not erroneous. As it was never before the jury, the jury cannot be faulted for not being persuaded by it. That evidence cannot support an argument that the jury's verdict was not supported by substantial evidence.

## B. *Fraud on the U.S. Patent and Trademark Office*

OTR obtained a trade dress registration for the tread design of its Outrigger tire. OTR brought a claim against West for infringing its trade dress. West argued that the registration was invalid because it was obtained through fraud on the PTO. The jury agreed. On a post-trial motion, however, the district court granted OTR's motion to set aside the jury's finding as a matter of law. Specifically, the district court concluded that, applying the clear and convincing evidence standard, there was not substantial evidence to support the verdict on that issue. On appeal, West argues that the jury's verdict should be reinstated.

### 1.   Standard of Review

A grant of a motion for judgment as a matter of law is reviewed de novo. *Spencer v. Peters*, 857 F.3d 789, 797 (9th

Cir. 2017).  "In reviewing a grant of judgment as a matter of law, we apply the same standard used by the district court in evaluating the jury's verdict.  A jury's verdict must be upheld if it is supported by substantial evidence."  *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) (internal citations omitted).  Substantial evidence is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion from the same evidence.  *Unicolors*, 853 F.3d at 984.  The evidence must be viewed in the light most favorable to the nonmoving party, in this instance West, and all reasonable inferences must be drawn in favor of that party.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50 (2000).  If conflicting inferences may be drawn from the facts, the question must be left to the jury.  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008).

### 2.  Standards for fraud on the PTO

A party harmed by a trademark's registration can seek to cancel the mark on certain specified grounds, including that the trademark was obtained through fraud on the PTO.  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) (citing 15 U.S.C. §§ 1064, 1119).  To succeed on a claim for cancellation based on fraud, a claimant must establish the following elements: 1) a false representation regarding a material fact; 2) the registrant's knowledge or belief that the representation is false; 3) the registrant's intent to induce reliance upon the misrepresentation; 4) actual, reasonable reliance on the misrepresentation; and 5) damages proximately caused by that reliance.  *Id.*

In a civil case, fraud must normally be established by clear and convincing evidence.  *United States v. U.S. Dist. Court for Cent. Dist. of Cal.*, 858 F.2d 534, 543 n.5 (9th Cir.

1988).  The Federal Circuit explicitly applies the clear and convincing standard to petitions to cancel trademarks for fraud on the PTO.  *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).  The district court concluded that the clear and convincing standard should apply here to West's claim that OTR had committed fraud on the PTO, and it so instructed the jury in this case.  We agree and join the Federal Circuit in requiring clear and convincing evidence for the elements of fraud on the PTO.

Accordingly, drawing all inferences in favor of West, we review whether there was substantial evidence whereby a reasonable jury could have found fraud on the PTO, recognizing that fraud must be proved by clear and convincing evidence.  *See Nakamoto v. Ashcroft*, 363 F.3d 874, 882 (9th Cir. 2004); *see also Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1337–38 (Fed. Cir. 2010) ("[W]e review whether . . . there was substantial evidence whereby a reasonable jury could have reached its verdict . . ., recognizing that [the question of fact] must be proved by clear and convincing evidence.").  "Clear and convincing evidence requires greater proof than preponderance of the evidence.  To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that [the asserted factual contentions are] highly probable.'"  *Sophanthavong v. Palmateer*, 378 F.3d 859, 866–67 (9th Cir. 2004) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

In granting OTR's motion to set aside the jury's finding of fraud, the district court concluded that there had not been clear and convincing evidence to support the fraud claim.  The court addressed two pieces of evidence that remain relevant to this appeal.  First, the court considered an email

written by a consultant noting that the Outrigger tread design contributed to the tire's self-cleaning ability.    The same consultant also submitted a declaration to the PTO without mentioning the self-cleaning function of the tread design. The court determined that OTR did not omit a potentially material fact because the self-cleaning nature of the Outrigger had already been disclosed to the PTO on a prior occasion. Second, the court considered a declaration written by an OTR manager claiming that the Outrigger is immediately identifiable based on its tire tread design.    The court concluded that this was a sincerely held subjective opinion, not a false statement of fact.

### 3.   Patrick Smith Declaration

We first address the declaration claiming that the Outrigger is immediately identifiably based on the tread design.  The declaration was provided to the PTO by Patrick Smith, an OTR manager.  Smith provided the declaration in response to a decision by the PTO examiner.  In that decision, the PTO examiner had denied the application for trade dress registration because she found the tread design to be functional and non-distinctive.  Smith responded to the non-distinctiveness finding by declaring that the "design of OTR's Outrigger tire is so distinctive that R-4 tire manufacturers, distributors and customers can immediately identify the Outrigger tire solely by seeing its tread design."  West argues that this statement was fraudulent because it was made without gathering any data from manufacturers, distributors or customers.

As an initial matter, Smith did not purport to convey the results of any survey of customers, manufacturers, or distributors.  Thus, the statement, by itself, did not constitute

clear and convincing evidence of a false representation regarding a material fact.  Furthermore, even if the statement was false, West did not provide any evidence that Smith knew the statement to be false.

West also failed to establish actual, reasonable reliance on the purported misrepresentation.  Smith submitted his declaration on September 27, 2011.  The examiner responded on October 30, 2011, again denying the application.  The examiner rejected OTR's September 27 arguments regarding functionality and distinctiveness.  She explained that OTR had not presented evidence of acquired distinctiveness under "Section 2(f)."  Section 2(f) provides that an applicant may establish acquired distinctiveness by proving substantial, exclusive, and continuous use of a mark in commerce for five years.  15 U.S.C. § 1052(f).

On April 30, 2012, OTR submitted another amendment to its application, this time seeking to establish substantial, exclusive, and continuous use of the trade dress in commerce. The amendment contained another declaration from Smith in which he related that OTR had sold $48 million worth of Outrigger tires over a period of 14 years.  The examiner amended her opinion on May 31, 2012, finding that the Outrigger tread design had acquired distinctiveness under section 2(f).

Smith's initial declaration regarding distinctiveness appears to have been irrelevant to the examiner's decision. In that first declaration, Smith stated that the design was distinctive because it was immediately recognizable, but the examiner was not convinced.  The examiner appears to have found distinctiveness solely because of Smith's second declaration establishing acquired distinctiveness through

continuous use in commerce.  Accordingly, there was not clear and convincing evidence that the examiner relied on Smith's first declaration in reaching her conclusion on acquired distinctiveness.

4.  Ray Evans Email

We next address the email discussing the functionality of the Outrigger design.  The email was written by Ray Evans, a tire engineering consultant for OTR.  In the email, Evans described four ways that the Outrigger tires were unique.  He then went on to write that "[a]ll of these design elements contribute to the tire's self cleaning ability that is needed to operate in adverse muddy conditions and also make it readily recognizable."  West argues that this statement demonstrates that all four design elements were functional.  Functional features are not eligible for trade dress protection.  West argues that Evans committed fraud on the PTO by omitting this information on functionality from a declaration he later sent to the PTO in support of OTR's application for trade dress registration.

The PTO examiner had already been informed by Patrick Smith that the tread design made the tires self-cleaning, however.  He told the examiner that "[a]ll R-4 tires . . . are self-cleaning."  Smith went on to argue that the distinctive angle of the Outrigger tread did not affect the self-cleaning function of the tires.  It was the angle of the tread that OTR sought to protect with its registration.

Given that OTR had already acknowledged that the tread design made the tires self-cleaning, there was no omission of a material fact.  Accordingly, we agree with the district court

that West failed to establish by clear and convincing evidence that OTR committed fraud on the PTO.

## C.  *The validity of OTR's claim for protectable trade dress*

As discussed above, the jury found that OTR's trade dress registration had been obtained through fraud, but the district court set that finding aside.  The jury also found that the trade dress claim was invalid, and the district court sustained that finding, denying OTR's motion for a new trial on the issue of validity and the claims based on the asserted trade dress.  OTR appeals that denial.  A district court's ruling on a motion for new trial is reviewed for an abuse of discretion.  *Flores v. City of Westminster*, 873 F.3d 739, 755–56 (9th Cir. 2017).

The validity question was posed as Question No. 1 on the special verdict form.  Question No. 1 asked the jury whether it found "by a preponderance of the evidence that OTR's registered trade dress is valid (is non-functional and has secondary meaning)."  The jury answered "No."

Question No. 1 went to the elements required to prevail on an infringement claim in a trademark case.  To prevail on such a claim, a plaintiff must show that: 1) it has a valid, protectable mark, and 2) the defendant's use of the mark is likely to cause consumer confusion.  *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).  To be valid and protectable, a mark must be distinctive and non-functional.  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (distinctiveness); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) (functionality).   The jury was instructed on those requirements, and Question No. 1 highlighted them by noting that to be valid the trade dress had to be "non-functional" and

have "secondary meaning."  Secondary meaning is required to establish the distinctiveness element of a design trade dress claim.  *Wal-Mart*, 529 U.S. at 215–16.

The fraud question was posed as Question No. 2, which asked whether the jury found "by clear and convincing evidence that OTR's certification of registration regarding its trade dress was procured by fraud."  The jury answered "Yes."

If a defendant can establish that a registered mark was obtained through fraud on the PTO, then the registration will be cancelled.  *See Hokto Kinoko*, 738 F.3d at 1097.  But the fate of a registration does not automatically determine a trademark's validity.  Registration merely provides a presumption of validity. *Talking Rain Beverage Co. Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003).  At trial, a registered mark is presumptively valid and therefore distinctive and non-functional, and the burden is on the defendant to prove otherwise.  *Tie Tech*, 296 F.3d at 782–83.

If a trademark is not registered, then a plaintiff may still assert a claim for infringement of its protectable trade dress right, but that plaintiff bears the burden to establish distinctiveness and non-functionality. *Talking Rain*, 349 F.3d at 603.  Thus, if a mark is cancelled, a claim for infringement may still be pursued based on an unregistered mark. *Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1131 (9th Cir. 2006) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir.2001)).  In other words, fraud on the PTO "does not affect the mark's validity, because a trademark need not be registered to be enforceable."  *Specialized Seating, Inc. v. Greenwich*

*Industries*, LP, 616 F.3d 722, 728 (7th Cir. 2010) (emphasis omitted); *cf.* J. Thomas McCarthy, 6 McCarthy on Trademarks and Unfair Competition § 31:60 (5th ed. 2018). Thus, if a defendant establishes that a mark was obtained through fraud on the PTO, the burden shifts back to the plaintiff to establish distinctiveness and non-functionality. *See Tie Tech*, 296 F.3d at 783; *see also Talking Rain*, 349 F.3d at 603. The plaintiff always maintains the burden to establish consumer confusion.

Given that the answer to Question No. 2 on fraud would have established the parties' burdens as to Question No. 1 on validity, the fraud question might logically have been posed before the validity question. Nobody objected to the special verdict form, however, and that specific defect has not been cited as a basis for appeal.

OTR argues that the jury found the trade dress invalid only because it had already found that the registration was fraudulently obtained. In other words, OTR argues that the jury's answer to Question No. 2 on fraud dictated its answer to Question No. 1 on validity. In support of its argument, OTR points to a jury instruction directing the jury to find the registration invalid if it was found to be fraudulently obtained.[4] But OTR's argument amounts to speculation. It does not seem to us especially likely that the jury skipped Question No. 1 on validity, answered Question No. 2 on

---

[4] This instruction could have been clearer, but it has no practical impact in this case. As noted above, a finding of fraud would negate the registration, but it would not necessarily mean that OTR could not have a valid trade dress claim. It would shift the burden back to OTR to establish non-functionality and secondary meaning because that burden is on a plaintiff pursuing a claim for trade dress infringement in the absence of a valid registration.

fraud, and then went back to answer Question No. 1 based on that jury instruction. The special verdict form itself provided the jury with directions to the contrary. Rather than being told to start with Question No. 2, the form listed the validity question as Question No. 1, and then provided the direction: "If your answer is 'Yes," DO NOT answer Question No. 2 and proceed to Question No. 3. If your answer is 'No,' please answer Question No. 2." The sequence of the questions on the special verdict form may have been in tension with the jury instruction, but the jury did not indicate any confusion or ask the court for any clarification. It seems to us more likely that the jury simply followed the special verdict form.

Nor is there any conflict in the jury's answers. The first question asked the jury to determine whether the trade dress was non-functional and had secondary meaning. The question did not mention fraud, and it did not direct the jury to consider the fraud question first. Accordingly, the jury was able to answer the question without considering fraud, and there is no evidence the jury did otherwise.

More broadly, we have a duty under the Seventh Amendment to harmonize a jury's answers on a special verdict form if a fair reading allows for it. *Bains LLC*, 405 F.3d at 771. Here, it is fair to assume that the jury answered Question No. 1 as it was written, without reference to fraud. If OTR thought that the special verdict form was confusing, the time to object was before the form was given to the jury. There was no objection at that time. We are not free to discard the jury's verdict because one of the parties argues after the fact that the jury might have been confused.

There was substantial evidence available for the jury to conclude that the tire tread trade dress was either functional

or non-distinctive and thus to answer "No" to Question No. 1. While OTR argued that the specific angle of the tire tread did not affect the functionality of the tread, the jury could have concluded otherwise. For example, in Ray Evans' email, he wrote that "[a]ll of these design elements contribute to the tire's self cleaning ability that is needed to operate in adverse muddy conditions and also make it readily recognizable." Likewise, in looking at the Outrigger tire, the jury could have concluded that the tread design was too similar to other tread designs to have acquired secondary meaning.

OTR also argues that it should obtain a new trial on its trade dress claim because the jury was prejudiced by West's claim that OTR had committed fraud on the PTO. Like the district court, we are not persuaded that the verdict was tainted by West's fraud arguments. It is far from unusual for juries to have to sort through conflicting claims. They are capable of doing so. The district court did not abuse its discretion in denying OTR's motion for a new trial.

## D. OTR's unregistered trade dress claim

OTR submitted a proposed jury instruction asserting a claim for infringement of OTR's unregistered trade dress pursuant to 15 U.S.C. § 1125(a)(1). The trial court rejected the proposed instruction on the grounds that OTR had not pled an unregistered trade dress claim.

The question here is whether OTR's complaint contained enough information to put the district court and West on notice that OTR had presented an unregistered trade dress claim. A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). "A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).

OTR did not state in its complaint that it was pursuing a claim for infringement of an "unregistered" trade dress. Likewise, OTR has not cited anything in the record demonstrating that OTR clearly asserted an unregistered trade dress claim prior to close of discovery. A defendant suffers prejudice if a plaintiff is allowed to proceed with a new theory of recovery after close of discovery. *Id*.

OTR argues that it pled an unregistered trade dress claim by asserting a claim under section 43 of the Lanham Act, 15 U.S.C. § 1125. It was not enough to simply cite section 43, however, because that section covers both registered and unregistered marks. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000) ("[T]he provision at issue here—§ 43—protects against infringement of unregistered marks and trade dress as well as registered marks." (citing *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046 (9th Cir.1998)). OTR's reference to section 43 did not by itself signal an unregistered trade dress claim.

Indeed, the references to section 43 tended to put West on notice as to other specific claims. For example, in paragraph 75 of the complaint, OTR asserted a violation of section 43 in reference to the registered "Outrigger" word mark. Likewise, OTR asserted a violation of section 43 in paragraph 73, but that paragraph referred to the claim for reverse passing off, not to a claim for infringement of an unregistered trade dress.

In short, OTR appeared to rely on the validity of its registration and did not put the court or West on notice of its intent to proceed with an unregistered trade dress claim. Our review of the first amended complaint, which emphasized OTR's registrations, confirms that impression. The district court did not abuse its discretion by refusing to instruct the jury on an unregistered trade dress claim when that claim had not been properly raised.

We pause to note that OTR's unregistered claim was only precluded to the extent that it asserted a broader claim than the registered claim.  As noted above, registration only provides a presumption of validity, shifting the burden to the defendant to rebut either distinctiveness or non-functionality. *Tie Tech*, 296 F.3d at 783.  If a registration is cancelled, for example, due to fraud on the PTO, then the claim survives but becomes more difficult to prove.  *See Bazaar Del Mundo Inc.*, 448 F.3d at 1131.  Perhaps appreciating that fact, OTR argues that its unregistered claim encompassed "something more" than what was covered by the registered claim.  OTR describes that "something more" as the OTR tire's "overall appearance, including the sidewall and its relationship to the road."  To assert this broader claim, however, OTR was required to clearly plead the claim in the complaint, and it did not.

## III.    Conclusion

We affirm the district court on all of the Lanham Act issues before us.  We address the remaining issues in a concurrently filed memorandum disposition.

**AFFIRMED.**