# United States Court of Appeals
## for the Federal Circuit

———————————

**COLUMBIA SPORTSWEAR NORTH AMERICA, INC., AN OREGON CORPORATION,**
*Plaintiff-Appellant*

**v.**

**SEIRUS INNOVATIVE ACCESSORIES, INC., A UTAH CORPORATION,**
*Defendant-Cross-Appellant*

———————————

2018-1329, 2018-1331, 2018-1728

———————————

Appeals from the United States District Court for the Southern District of California in No. 3:17-cv-01781-HZ, Judge Marco A. Hernandez.

———————————

Decided: November 13, 2019

———————————

NICHOLAS (NIKA) FREMONT ALDRICH, JR., Schwabe, Williamson & Wyatt, Portland, OR, argued for plaintiff-appellant. Also represented by DAVID W. AXELROD, SARA KOBAK.

SETH MCCARTHY SPROUL, Fish & Richardson, PC, San Diego, CA, argued for defendant-cross-appellant. Also represented by CHRISTOPHER MARCHESE, OLIVER RICHARDS, TUCKER N. TERHUFEN.

––––––––––––––

Before LOURIE, MOORE, and STOLL, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Columbia Sportswear North America, Inc. ("Columbia") appeals from the U.S. District Court for the Southern District of California's judgment after a jury trial that claims 2 and 23 of U.S. Patent 8,453,270 ("the '270 patent") are invalid as anticipated and obvious. *See* Judgment, *Columbia Sportswear N. Am. v. Seirus Innovative Accessories, Inc.*, No. 3:17-cv-01781 (S.D. Cal. Nov. 22, 2017), ECF No. 403. Seirus Innovative Accessories, Inc. ("Seirus") cross-appeals from the U.S. District Court for the District of Oregon's grant of summary judgment that it infringes U.S. Patent D657,093 ("the '093 patent") and from its entry of the jury's damages award. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, 202 F. Supp. 3d 1186 (D. Or. 2016) ("*Summary Judgment Decision*"). Because we conclude that the court did not err in holding claims 2 and 23 of the '270 patent invalid but that it did err in granting summary judgment of infringement for the '093 patent, we affirm-in-part, reverse-in-part, and remand for further proceedings.

BACKGROUND

At issue in these proceedings are two patents: the '270 patent and the '093 patent. The '270 patent is a utility patent directed to materials that use a pattern of heat-directing elements coupled to a base fabric to manage heat through reflection or conductivity. '270 patent col. 1 ll. 22–27. Figures in the patent depict the material's use in cold-weather and camping gear, including jackets, boots, gloves, hats, pants, sleeping bags, and tents. *Id.* figures 4–15. At issue here are claims 2 and 23. Claim 2 depends from claim 1, which recites:

1. A heat management material adapted for use with body gear, comprising:

a base material having a transfer property that is adapted to allow, impede, and/or restrict passage of a natural element through the base material; and

a discontinuous array of discrete heat-directing elements, each independently coupled to a first side of a base material, the heat directing elements being positioned to direct heat in a desired direction, wherein a surface area ratio of heat-directing elements to base material is from about 7:3 to about 3:7 and wherein the placement and spacing of the heat-directing elements permits the base material to retain partial performance of the transfer property.

*Id.* col. 8 ll. 8–22. Claim 2 further requires that "the base material comprises an innermost layer of the body gear having an innermost surface, and wherein the heat-directing elements are positioned on the innermost surface to direct heat towards the body of a body gear user." *Id.* col. 8 ll. 23–26.

The '093 patent is a design patent drawn to the "ornamental design of a heat reflective material." As with all design patents, what is claimed is "the ornamental design . . . as shown and described." 37 C.F.R. § 1.153(a). Figure 1 depicts the claimed wave-pattern design:



FIG. 1

Several remaining figures in the patent depict the design as applied to sleeping bags, boots, pants, gloves, and jackets. '093 patent figures 4–10.

On January 12, 2015, Columbia filed suit in the District of Oregon accusing Seirus of infringing both patents. Seirus first filed a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). Relying on *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990), Seirus argued that it was not subject to personal jurisdiction in Oregon, so it did not reside in the district for purposes of 28 U.S.C. § 1400(b). Defendant Seirus Innovation Accessories, Inc.'s Memorandum in Support of Motion to Dismiss, or, Alternatively, Transfer Venue to the Southern District of California, *Columbia Sportswear N. Am. v. Seirus Innovative Accessories, Inc.*, No. 3:17-cv-01781 (Feb. 27, 2015), ECF No. 16. Seirus moved in the alternative to transfer the case to the Southern District of California for convenience. The court declined to dismiss or transfer the case because it found itself to have personal jurisdiction over Seirus and found the convenience transfer factors to be balanced. *See Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, No. 3:15-CV-00064-HZ, 2015 WL 3986148, at *1 (D. Or. June 29, 2015).

The district court also granted summary judgment that Seirus's HeatWave products infringe the '093 patent. *See Summary Judgment Decision*, 202 F. Supp. 3d 1186. The court first held that the "ordinary observer" for the design patent infringement analysis would be the end buyer and user of Seirus's gloves and products. *Id.* at 1192. Viewing the designs side-by-side, the court then reasoned that "even the most discerning customer would be hard pressed to notice the differences between Seirus's HeatWave design and Columbia's patented design," characterizing the difference in wave pattern, orientation, and the presence of Seirus's logo as "minor differences." *Id.* at 1192–93.

Two years after its first venue motion, Seirus moved again under Rule 12(b)(3) to dismiss the case for lack of jurisdiction or to transfer it to the Southern District of California. This time, Seirus's argument relied on the Supreme Court's intervening decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), which overruled *VE Holding*. Although it found Seirus had waived its venue challenge, the district court found *TC Heartland* to be "an intervening change in the law excusing [Seirus]'s waiver" and transferred the case to the Southern District of California. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 265 F. Supp. 3d 1196, 1208 (D. Or. 2017) ("*Transfer Decision*").

In that court, infringement and invalidity of the '270 patent were tried to a jury, and the jury determined that claims 2 and 23 were invalid as both anticipated and obvious. *See* Jury Verdict Form, *Columbia Sportswear N. Am. v. Seirus Innovative Accessories, Inc.*, No. 3:17-cv-01781 (Sept. 29, 2017), ECF No. 377, J.A. 4–6. The jury did not reach the issue of infringement of the '270 patent. The jury also considered damages and willfulness for infringement of the '093 patent, awarding Columbia $3,018,174 in damages but finding that the infringement was not willful. *Id.*

Both parties filed post-trial motions for judgment as a matter of law and for a new trial, but the court summarily denied them in a two-page opinion. J.A. 7–9. Both parties filed notices of appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

In its appeal, Columbia argues that the district court should have granted its motion for judgment as a matter of law that the invention of the '270 patent was not anticipated and would not have been obvious at the time of the invention. Columbia also asks us to grant it a new trial on validity issues for the '270 patent. If the case is remanded for any reason, Columbia requests that we reverse the

district court's decision, rendered after *TC Heartland*, to transfer the case to the Southern District of California. In the cross-appeal, Seirus requests that we reverse the district court's grant of summary judgment that its products infringe the '093 patent and reverse or vacate the damages. We consider each issue in turn.

In reviewing issues tried to a jury, we review the district court's denial of post-trial motions for judgment as a matter of law and for a new trial under the law of the regional circuit—here, the Ninth Circuit. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010) (citing *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1370 (Fed. Cir. 2009)). In evaluating a district court's ruling on motions for judgment as a matter of law, we ask whether the verdict was supported by substantial evidence. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008)). Under Ninth Circuit law, "[a] jury's verdict must be upheld if supported by substantial evidence." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs. Inc.*, 897 F.3d 1008, 1015 (9th Cir. 2018) (citing *Unicolors*, 853 F.3d at 984). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion from the same evidence," and "[t]he credibility of the witnesses and the weight of the evidence are issues for the jury and are generally not subject to appellate review." *Id.*

We review the district court's denial of a motion for a new trial for an abuse of discretion. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 728 (9th Cir. 2007) (citing *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1189 (9th Cir. 2005)). Rule 59(a)(1)(A) provides that the district court may grant a motion for a new trial after a jury trial "for any reason for which a new trial has . . . been granted in an action at law in federal court." A "motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of

the evidence . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). In the Ninth Circuit, a "trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) (citing *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1248 (9th Cir. 1998), *cert denied*, 525 U.S. 930 (1998)).

## I. THE APPEAL – THE '270 PATENT

We first consider the jury's findings that the '270 patent is invalid. At trial, Seirus presented two invalidity grounds to the jury: that the asserted claims were anticipated by Fottinger and that the claims would have been obvious over Fottinger alone or in combination with one of Halley, Worley, Vaughn, or Blauer. The jury found the claims invalid under both theories.

Fottinger, U.K. Patent Application GB 2,073,613A, describes textile sheets coated on at least one face with a binder and metal powder. Fottinger lists as suitable "[a]ll known dispersible binders" and comments that aluminum or aluminum alloy are preferred metals. The coating is described as discontinuous and as coating from 5% to 40% of the surface area of the coated face, while the textile sheet is described as "very suitable for use as interlinings and as lining fabrics for articles of clothing." Fottinger col. 2 ll. 48–50.

The other references each relate to outerwear materials with various coatings. Halley, U.S. Patent Application 2002/0197924, relates to composite lining materials for garments. Halley Abstract. Halley describes a water-resistant, water-vapor permeable, flexible substrate that has fabric secured to one side and a plurality of discrete abrasion-resisting polymeric dots on the other. *Id.* The

abrasion-resisting dots cover 30% to 70% by area of the flexible substrate, and "coverage of the substrate material is not too great to substantially affect the water-vapor-permeability thereof." *Id.* ¶ 44.

Vaughn, U.K. Patent Application GB 2,350,073, similarly describes a water-resistant water-vapor permeable material with polymer coating to improve abrasion resistance, while Blauer, U.S. Patent 5,626,949, describes a breathable shell for outerwear with a high tensile strength stratum printed on the inner face of the fabric, covering 10% to 90% of the surface area of the inner face. Worley, U.S. Patent 7,135,424, also describes a substrate coated discontinuously with a polymeric material for use in apparel, footwear, medical products, and other products.

Columbia argues on appeal that the district court should have granted its motion for JMOL that the claims are not anticipated and would not have been obvious over the references. It devotes most of its briefing to the anticipation ground. But because we agree with Seirus that substantial evidence supports the jury's verdict that the claims would have been obvious, we need not reach Columbia's anticipation arguments.

Columbia raises two challenges to the jury's obviousness findings: (1) that Fottinger fails to disclose certain claim limitations, and (2) that Seirus's expert testimony was deficient. First, Columbia argues that Fottinger fails to teach the placement of "discrete heat directing elements," "each individually coupled" to a base material, on the "innermost surface" of a garment. Specifically, Columbia points to a passage in Fottinger that states that the disclosed materials are "very suitable for use as interlining and as lining fabrics" and suggests that interlinings differ from the innermost surface of a garment. Appellant's Br. 44 (citing Fottinger, col. 2 ll. 48–52). Columbia further maintains that Fottinger does not disclose heat-directing elements because the plastic binder in Fottinger does not

direct heat, and, if the aluminum particles in the binder are considered to be the heat-directing elements, those particles are not independently coupled to the base material as required by the claims.

To the extent Seirus relies on other references to meet these limitations, Columbia argues that the record lacks evidence regarding combining the art. Additionally, Columbia contends that a person of skill would not have expected 30% to 70% coverage to be successful in view of Fottinger, which teaches no more than 40% coverage of a material with the binder.

Second, Columbia argues that this case involves a technical area beyond the training and education of most jurors and thus requires competent expert testimony on the issue of obviousness. Columbia then suggests that Dr. Block's testimony is unable to support the jury's verdict because he failed to apply the correct legal standard for obviousness and failed to consider objective indicia in his analysis.

As to the merits of the obviousness defense, Seirus responds that the range in Fottinger and the range in the claims overlap and that the overlap establishes a prima facie case of obviousness, which was not rebutted. Seirus also counters that Fottinger discloses every limitation of the claims, but, to the extent Fottinger fails to meet every limitation, Seirus relies on any of Vaughn, Halley, Blauer, and Worly as disclosing 30% to 70% coverage.

In response to Columbia's argument regarding expert testimony, Seirus maintains that expert testimony is not required in this case because the references are easily understandable. If expert testimony is required, however, Seirus relies on Dr. Block's testimony and argues that it is legally correct.

We agree with Seirus that the jury's obviousness verdict was supported by substantial evidence. Obviousness is a question of law, supported by underlying fact

questions. *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1361 (Fed. Cir. 2012). In evaluating obviousness, we consider the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any secondary considerations. *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966). "[A] prima facie case of obviousness arises when the ranges of a claimed composition overlap the ranges disclosed in the prior art." *In re Harris*, 409 F.3d 1339, 1341 (Fed. Cir. 2005) (citing *In re Peterson*, 315 F.3d 1325, 1329 (Fed. Cir. 2003)). The parties dispute three claim limitations: (1) "discrete heat directing elements" that are "each individually coupled to a base material; (2) that those elements are present on the innermost surface of a garment; and (3) that the elements cover 30% to 70% of the base material.

Fottinger discloses "a textile sheet" with a "discontinuous coating comprising a binder and metal powder" covering "from 5 to 40% of the surface area of the coated face." Fottinger col. 2 ll. 54–60. The jury was entitled to rely on Fottinger's disclosed "discontinuous coating comprising a binder and metal powder" as the claimed "discrete heat directing element." Likewise, the jury was entitled to read Fottinger's disclosure that the coating is "on at least one face" and could be used as "lining fabrics for articles of clothing" to mean that Fottinger's coated face was on the innermost surface of a garment. The range of coverage in Fottinger significantly overlaps that in the claims, and "even a slight overlap in range establishes a *prima facie* case of obviousness." *In re Peterson*, 315 F.3d at 1329.

Columbia's specific arguments that the heat directing elements in Fottinger are the aluminum particles and that the Fottinger coating could not have been on the innermost surface of a garment are simply inconsistent with the facts as indicated above. The record evidence was "adequate to support the jury's conclusion," even if Columbia would

"draw a contrary conclusion from the same evidence." *OTR Wheel Eng'g*, 897 F.3d at 1015.

Columbia also argues that Seirus's obviousness defense lacked necessary, competent expert testimony. But we are not persuaded that the legal determination of obviousness in this case requires such evidence. The technology here—coated materials for cold weather and outdoor products—is "easily understandable without the need for expert explanatory testimony." *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009) (quoting *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004)). The primary topics covered by the '270 patent specification are the pattern of the heat-directing elements, percentage coverage of the base material, and the various ways the material could be used in body gear. There is no discussion of thermodynamics or the mechanism that yields the claimed material's heat retentive properties in the patent. Thus, given the patent and references' general, easily understood language, this is not a case that requires expert explanation. *See Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1348 (Fed. Cir. 2017) (holding expert testimony was not required for motivation to combine where the specification and claims did not include any new manufacturing equipment or instructions to produce the claimed food containers). Because expert testimony is not required in this case, Columbia's critiques of Dr. Block's testimony do not persuade us that Columbia is entitled to judgment as a matter of law.

In light of the foregoing and considering the record before the district court, the jury's verdict that the claims of the '270 patent would have been obvious is certainly supported by substantial evidence, and judgment as a matter of law was properly denied.

Columbia argues in the alternative that it is entitled to a new trial for two reasons: (1) because the court declined to instruct the jury with Columbia's proposed instruction

on anticipatory ranges and (2) because Seirus's expert, Dr. Block, falsely testified that Fottinger taught an embodiment with 36% coverage.

First, Columbia argues that the district court should have instructed the jury to apply a set of factors in determining whether Fottinger's overlapping range anticipates the range in the claims. The proposed instruction would have asked the jury to consider whether "there is a considerable difference" between the two ranges, whether the claimed range was "critical to the invention," and whether the claimed range "performs contrary to what might be expected from the prior art." J.A. 1567.

Because Columbia does not challenge the instructions given as misleading or incorrect statements of the law, we review the district court's jury instruction for an abuse of discretion. *Mockler v. Multnomah Cty.*, 140 F.3d 808, 812 (9th Cir. 1998). Further, in the Ninth Circuit, "[h]armless error review applies to jury instructions in civil cases." *Kennedy v. S. Cal. Edison Co.*, 268 F.3d 763, 770 (9th Cir. 2001). We need not decide whether the district court abused its discretion in declining to instruct the jury on anticipatory ranges because the jury also found the claims obvious under other jury instructions unchallenged by Columbia on appeal. Any error in the instructions for anticipation thus constitutes harmless error.

Second, Columbia submits that Dr. Block's testimony regarding Fottinger entitles it to a new trial. Specifically, Dr. Block testified at trial that Fottinger's use of a "25 mesh" with half-millimeter spots yielded an embodiment with 36% coverage. Both Seirus and Columbia agree that this testimony was incorrect. Appellant's Br. 68; Appellee's Br. 64. Seirus characterizes Dr. Block's testimony as an error in interpreting how the dot pattern in Fottinger repeated, Appellee's Br. 67, while Columbia characterizes it as intentionally introduced false testimony, Appellant's Br. 69–70.

We have considered the issue of false testimony in at least two cases, *Fraige v. American-National Watermattress Corp.*, 996 F.2d 295 (Fed. Cir. 1993), and *Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc.*, 818 F.3d 1320 (Fed. Cir. 2016). Both came to us after denials of motions under Rule 60(b), which specifically provides for relief from a judgment in the case of fraud. Even putting aside this procedural difference, however, the facts here—a few lines of mistaken expert testimony—are in stark contrast to the facts in those cases. For example, in *Fraige*, the defendant's fraudulent conduct was so significant that the court imposed sanctions against the defendant under Fed. R. Civ. P. 11 and referred the matter of misconduct to the United States Attorney. 996 F. 2d at 296–97. In *Rembrandt*, an expert falsely testified about performing experiments material to the issues in the case and withheld data that would have undermined his opinions. 818 F.3d at 1323–24. Such conduct infects the proceedings and can result in an unfair trial, but the record here is not comparable. Even if Dr. Block purposefully misrepresented the contents of Fottinger, Fottinger itself was in the record for the jury to consider. The jury could have easily verified any representations about the reference. Moreover, Columbia had ample opportunity to cross-examine Dr. Block on his incorrect understanding of Fottinger's disclosure. Under these circumstances and given the uncomplicated nature of the evidence, we cannot conclude that Dr. Block's misstatements warrant a new trial.

## II. THE CROSS APPEAL – THE '093 PATENT

In the cross-appeal, Seirus argues that the district court erred in granting summary judgment that its products infringe the '093 patent and that the court made a series of errors regarding damages for infringing that patent. But, because we agree with Seirus that the district court erred in granting summary judgment, we need not reach its arguments regarding damages.

We review a grant of summary judgment under the law of the regional circuit, which in this case is the Ninth Circuit. *See Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013). The Ninth Circuit "review[s] a district court's order granting or denying summary judgment *de novo.*" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014).

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "We determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002) (citing *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001)). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (citing *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997)).

Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993)). The "ordinary observer" test is the sole test for determining whether a design patent has been infringed. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc). The test originates from the Supreme Court's *Gorham* decision, which provides that "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one

patented is infringed by the other." *Gorham Co. v. White,* 81 U.S. 511, 528 (1871)). "The ordinary observer test applies to the patented design in its entirety, as it is claimed." *Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d 1294, 1303 (Fed. Cir. 2010). The ordinary observer is considered to be familiar with prior art designs, and "[w]hen the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art." *Id.* (citing *Egyptian Goddess,* 543 F.3d at 681). "If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer." *Id.*

In analyzing whether Seirus's products infringe, the district court began by identifying the ordinary observer. The court found that it was the "retail customer who buys and uses Seirus's products lined with the HeatWave fabric to keep their hands, feet, or head warm during outdoor activities," and deemed such an end buyer and user of Seirus's products to be the ordinary observer. *Summary Judgment Decision,* 202 F. Supp. 3d at 1192. Considering the designs side-by-side, the court found that "even the most discerning customer would be hard pressed to notice the differences between Seirus's HeatWave design and Columbia's patented design." *Id.*

Seirus argued that there were substantial and significant differences between the designs—including that the waves in Seirus's design were interrupted by repeated use of Seirus's logo, that waves varied in terms of orientation, spacing, and size, and especially that some of the designs differed by 90°. But the district court disagreed. First, the district court declined to consider Seirus's logo placement because logo placement was not claimed in Columbia's patent. *Id.* at 1194. As for orientation, the court discounted this feature because the '093 patent did not require a

particular design orientation. In comparing the wave spacing and size, the court found those differences were not claimed in the patent and were irrelevant to its analysis. *Id.* at 1195. Even considering the differences, however, the court found them to be "so minor as to be nearly imperceptible" and that they did "not change the overall visual impression that the Seirus design is the same as Columbia's patented one." *Id.* To complete its analysis, the court considered Seirus's submitted prior art designs, which the court found to be "far afield from Columbia's 'heat management materials.'" *Id.* at 1196. Considering the closest design, however, the court found Columbia and Seirus's designs to be "substantially closer" than the pattern disclosed in a prior art patent. *Id.* at 1197.

Seirus argues that this case should not have been resolved on summary judgment because of several fact disputes. For example, Seirus suggests that the parties disputed the identity of the ordinary observer, and a jury could have determined that the ordinary observer was a sophisticated, commercial buyer, not an end customer buying the products directly. Appellee's Br. 23. Such a buyer, according to Seirus, would have noticed differences between the designs, including the physical orientation of the designs and the thickness of the waves. Seirus also contests the court's evaluation of the prior art as improper resolution of disputed fact issues. Seirus argues that the district court's principal mistake, however, was to "ignore the repeating Seirus logo boxes, which are an integral part of the accused design." *Id.* at 28. According to Seirus, excluding such ornamental elements of the accused design simply because they include its logo is at odds with this court's jurisprudence that the ordinary observer compare the overall appearance of the two designs.

Columbia responds that there was no genuine dispute of material fact regarding infringement. According to Columbia, the ordinary observer is not the intervening commercial reseller but the end consumers who are the

principal purchasers of products with Seirus's design. Regarding Seirus's logo, Columbia argues that its presence does not make Seirus's design less infringing, and, when the design is compared without the logo, it is virtually identical to that claimed in the '093 patent. As for the product's orientation, Columbia argues that fabric can be oriented in any direction depending on how it is held, so the court was correct to reject Seirus's defense that orientation was material to the analysis.

Given the record in this case, we are persuaded that the district court erred in granting summary judgment of infringement for two reasons: (1) the court improperly declined to consider the effect of Seirus's logo in its infringement analysis and (2) the court resolved a series of disputed fact issues, in some instances relying on an incorrect standard, that should have been tried to a jury.

The district court relied on one precedent from this court—*L.A. Gear*—for the proposition that logos should be wholly disregarded in the design-infringement analysis. In that case, the parties did not dispute that the patented and accused designs were substantially similar. *L.A. Gear*, 988 F.2d at 1125. In fact, "copying [was] admitted." *Id.* In evaluating infringement there, we explained that design infringement is not avoided "by labelling." *Id.* at 1126. A would-be infringer should not escape liability for design patent infringement if a design is copied but labeled with its name. But *L.A. Gear* does not prohibit the fact finder from *considering* an ornamental logo, its placement, and its appearance as one among other potential differences between a patented design and an accused one. Indeed, the fact finder is tasked with determining whether an ordinary observer would find the "effect of the whole design substantially the same." *Gorham*, 81 U.S. at 530. It would be inconsistent with this mandate to ignore elements of the accused design entirely, simply because those elements included the name of the defendant.

Before the district court, Seirus raised several disputed fact issues regarding differences between its design and Columbia's patented one.  For example, Seirus argued that the waves in its design are not of a uniform thickness, whereas the '093 patent waves are consistent and that this difference would affect the infringement analysis.  However, the court found that the wave thickness was not claimed in Columbia's patent.  This finding is in error, however, because the claim of the '093 patent is drawn to the "ornamental design of a heat reflective material as shown and described," and Columbia's design has uniform line thickness in every figure in the patent.

The court then deemed the wave thickness difference "minor" and found that it did "not change the overall visual impression that the Seirus design is the same as Columbia's patented one." *Summary Judgment Decision*, 202 F. Supp. 3d at 1195.  But the district court's piecemeal approach, considering only if design elements independently affect the overall visual impression that the designs are similar, is at odds with our case law requiring the factfinder to analyze the design as a whole. *See Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006).  An ordinary observer is deceived by an infringing design as a result of "similarities in the overall design, not of similarities in ornamental features considered in isolation." *Id.* at 1371.

Likewise, in evaluating the prior art, the court erroneously compared Columbia's design, Seirus's HeatWave product's design, and a prior art patent design side-by-side before concluding that "[t]he overall visual effect of the Columbia and Seirus designs are nearly identical and if the logo was removed from the Seirus design, an ordinary observer would have great difficulty distinguishing between the Seirus and Columbia designs." *Summary Judgment Decision*, 202 F. Supp. 3d at 1197.

The district court's evaluation of the prior art and its evaluation of wave thickness present another problem. In both instances, the district court made a finding of fact—whether an element of Seirus's design would give an ordinary observer a different visual impression than Columbia's design—over a disputed factual record. Such fact findings are not permitted by Rule 56 and should be resolved by a jury on remand.

The parties raise additional issues regarding the court's damages award under 25 U.S.C. § 289. For example, Columbia argues that the § 289 remedy is one of disgorgement that should be tried to the bench. And there is a significant issue as to whether the proper article of manufacture in this case should be the HeatWave product actually sold or the fabric encompassing the design. Both of these issues are important, but we do not reach them because we have vacated the infringement finding.

## III. Venue

Columbia challenges the district court's transfer of the case to California. This case was initially filed in the District of Oregon in January 2015. In Seirus's initial responsive pleadings, it contested personal jurisdiction, and, relying on *VE Holding*, venue. Two years later, the Supreme Court decided *TC Heartland*, which overruled *VE Holding*. Thereafter, Seirus filed a renewed motion to dismiss or transfer the case for improper venue, now relying on *TC Heartland*.

Considering the fact that Seirus had filed a Rule 12 motion without challenging venue under § 1400(b) as interpreted by *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957), the court first found that Seirus waived its venue objection under Fed. R. Civ. P. 12(g). *Transfer Decision*, 265 F. Supp. 3d at 1202. The court then considered whether Seirus's litigation conduct amounted to waiver of any objection to venue. Comparing this case to other district court cases on this issue, the court found that

Seirus had engaged in substantially more litigation conduct than the defendants in those cases and had waived its defense on this basis as well. *Id.* at 1202–03. Although Seirus had waived its objection to venue in two different ways, the court excused that waiver because *TC Heartland* constituted an intervening change in the law. Thus, the court transferred the case to the Southern District of California. *Id.* at 1203–08.

We review a district court's decision to exercise or, as here, not exercise its inherent power to find waiver for an abuse of discretion. *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1895 (2016) (reviewing a district court's exercise of its inherent power to rescind a discharge order and recall a dismissed jury for an abuse of discretion); *In re Micron Tech., Inc.*, 875 F.3d 1091 (Fed. Cir. 2017).

Columbia argues that the court's decision to excuse Seirus's waiver was in error, and that, if this case is remanded for any reason, we should "hold that the transfer of venue was improper[] and remand with an order to transfer the case back to the District of Oregon for all further proceedings." Appellant's Br. 74. Columbia relies on this court's *In re Micron* decision to argue that *TC Heartland*'s intervening change in the law excused only Seirus's Rule 12 waiver, not its litigation conduct-based waiver.

Seirus contests Columbia's interpretation of this court's *Micron* decision and maintains that the district court acted within its discretion to excuse both rule- and non-rule-based waiver.

The Federal Rules of Civil Procedure provide that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). Motions asserting certain defenses, however, including improper venue must be filed before a responsive pleading is filed. Fed. R. Civ. P. 12(b)(3). A party that moves under Rule 12 for improper venue "must not make another motion under this rule raising a defense

or objection that was *available* to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2), (h)(1). "[I]ssues of waiver or forfeiture of patent-venue rights under § 1400(b) and § 1406(a) are governed by [Federal Circuit] law," *In re Oath Holdings Inc.*, 908 F.3d 1301, 1305 (Fed. Cir. 2018), and we addressed the circumstances under which a district court can find patent venue waived in *In re Micron*, 875 F.3d at 1100–01.

In *Micron*, as here, the defendant failed to raise a venue defense contesting that the definition of "resides" in 28 U.S.C. § 1391(b) was trumped by the patent-venue statute, § 1400, in its first motion under Rule 12 but proceeded to do so in a later motion after the Court issued *TC Heartland*. Noting that controlling precedent precluded a district court from accepting a litigant's objection to venue before *TC Heartland*, we held that the venue defense was "not 'available'" and that Rule 12's waiver rule was inapplicable. *In re Micron*, 875 F.3d at 1100.

We further explained, however, that a district court could find a venue defense waived outside of the Rule 12 framework. While Rule 12(h)(1) provides for waiver in certain circumstances, "[i]t does not state that there is no other basis on which a district court might find a defendant to have forfeited an otherwise-meritorious venue defense." *Id.* Relying on the Supreme Court's *Dietz* decision, we explained that a district court's inherent authority to manage its own affairs to achieve the orderly and expeditious disposition of cases permits it to find forfeiture of a venue objection, provided that the court respects and does not circumvent relevant rights granted by statute or rule. *Id.* at 1101. Such "authority must be exercised with caution to avoid the forbidden circumvention." *Id.*

Columbia submits that our *Micron* decision stands for the proposition that "*TC Heartland's* intervening change in the law only excused rule-based waiver." Appellant's Br. 73. Columbia is incorrect. In *Micron*, this court explained

that the district court had *authority* to find waiver outside of the context of Rule 12. But we did not prohibit a district court from excusing litigation conduct-based waiver based on an intervening change in the law. The court found that "[i]t would have been unreasonable to expect [Seirus] to argue that venue was proper only in the state of its incorporation prior to *TC Heartland*," and that finding was not an abuse of discretion. *Transfer Decision*, 265 F. Supp. 3d at 1207. Indeed, "[j]ust because a district court has the inherent power to [find waiver] does not mean that it is appropriate to use that power in every case." *Dietz*, 136 S. Ct. at 1893. Because the district court did not abuse its discretion in excusing Seirus's waiver of its venue defense, we do not find that the district court needs to retransfer this case back to Oregon.

CONCLUSION

We have considered the parties' remaining arguments but find them unpersuasive. Accordingly, we affirm the district court's judgment that claims 2 and 23 of the '270 patent are invalid under § 103, reverse the district court's grant of summary judgment that Seirus infringed the '093 patent, and remand for further proceedings concerning the design patent in the Southern District of California.

## AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED

COSTS

Costs to Seirus.